# IN THE COURT OF APPEALS OF IOWA

No. 15-0691
Filed September 23, 2015

IN THE INTEREST OF N.H.,
Minor Child,

S.H., Father,
Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.

The father appeals the termination of his parental rights to his child, N.H. **AFFIRMED.**

Mark Milder, Waverly, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Linda Fangman, County Attorney, and Steven Halbach and Kathleen Hahn, Assistant County Attorneys, for appellee State.

Melissa Anderson Seeber of the Waterloo Juvenile Public Defender, Waterloo, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

The father appeals the termination of his parental rights to his daughter, N.H. While conceding the grounds for termination under Iowa Code section 232.116(1)(h) (2015) were proved, he asserts the court should have granted his request to be personally or telephonically present at the hearing, and that termination is not in the child's best interests. He further argues the court improperly denied his request for a deferral of permanency or, alternatively, the entry of a guardianship order. We conclude no constitutional rights were violated, as the court offered him the opportunity to testify telephonically, which he declined; furthermore, our case law does not require the parent to be present to satisfy due process. Additionally, due to the history of domestic violence perpetrated against the mother by the father, as well as the violence directed at N.H., termination of the father's parental rights is in N.H.'s best interests. Consequently, we affirm the order of the district court.

**I. Factual and Procedural Background**

N.H., born August 2013, first came to the attention of the Department of Human Services (DHS) due to allegations of domestic violence in the home. The father alleged the mother had attacked him. DHS investigated and found the father had perpetrated the domestic violence, not the mother.

The mother, the father, and N.H. were residing together along with the mother's two older children, M.G. and B.G.,[1] who have a different biological father. On July 9, 2014, the mother's body was found and it was determined she

---

[1] M.G., born March 2006, and B.G., born November 2007, were removed at the same time as N.H. They are also residing in the care of the maternal relatives.

was murdered. M.G. and B.G. reported being present at the time of the homicide, and that N.H.'s father killed the mother. The DHS worker also testified the father's relatives had informed her that the father had come to their home and told them he had killed the mother. The father was taken into police custody, and the State charged him with first-degree murder. As of the date of the termination hearing, there was no disposition of the criminal charges. At all times during the pendency of these proceedings, the father has remained in jail and has had no contact with N.H.

N.H. was removed from the home on July 10, 2014, and placed in foster care. DHS then identified relatives who could care for N.H., and she was moved to the care of her maternal relatives, where she remained at the time of the termination hearing. She was adjudicated in need of assistance (CINA) on August 14, 2014. A permanency hearing was held on January 15, 2014, and the district court directed the State to file a petition for termination of the father's parental rights.

The State's petition was filed on February 9, 2015. The termination of parental rights hearing was held on March 12, 2015, following the denial of the father's motion for a continuance and a request to appear personally or telephonically. The father was represented by counsel throughout the hearing; additionally, the father declined the court's offer to allow him to testify. On April 3, 2015, the district court entered an order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h). The father appeals.

**II. Standard of Review**

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the court to affirm. *Id.* To the extent we are reviewing a ruling on the father's motion, our review is for an abuse of discretion, though our review of constitutional claims is de novo. *See In re E.H., III*, 578 N.W.2d 243, 245–46 (Iowa 1998).

**III. Termination**

The father does not contest that N.H. cannot be returned to his care, pursuant to Iowa Code section 232.116(1)(h). Consequently, we affirm the district court's termination of the father's parental rights under paragraph (h). *See S.R.*, 600 N.W.2d at 64.

Furthermore, we do not agree with the father's contention that termination of his parental rights is not in N.H.'s best interests. Not only is the father in jail, charged with the murder of the mother, he has perpetrated violence on N.H. as well as the other children in the home. As the district court noted:

> The older girls often cry out for their mother at times and express extreme fear of [the father], and other members of his family. [M.G.] reports being physically abused by [the father]. She has stated that [the father] would hit her when she wet the bed and also on the night of the murder. [M.G.] reports that [the father] smacked her when she was crying after seeing [the father] strike her mother down in the road. Both older girls express witnessing additional acts of domestic violence between [the father] and their mother. The older children also report observing [the father] throwing [N.H.] in the air and shaking [N.H.] to try and get her to stop crying.

Termination proceedings are meant to protect the children from future harm. *See In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992). The father has demonstrated he is a violent individual who cannot care for N.H. without subjecting her to harm. *See id.* at 814 (noting a parent's past behavior is indicative of his future actions). Though he claims termination would preclude contact with his relatives, permanency, in the form of termination of his rights, is nonetheless in N.H.'s best interests. *See* Iowa Code § 232.116(2).

**IV. Due Process**

The father also contends that his constitutional rights were violated when the district court denied his request to appear personally, or to be present telephonically throughout the hearing. Iowa Code section 232.38 governs the presence of parents at a juvenile hearing, and states:

> Any hearings or proceedings under this division subsequent to the filing of a petition shall not take place without the presence of one or both of the child's parents, guardian or custodian except that a hearing or proceeding may take place without such presence if the parent, guardian or custodian fails to appear after reasonable notification, or if the court finds that a reasonably diligent effort has been made to notify the child's parent, guardian, or custodian, and the effort was unavailing.
> In any such hearings or proceedings the court may temporarily excuse the presence of the parent, guardian or custodian when the court deems it in the best interests of the child. Counsel for the parent, guardian or custodian shall have the right to participate in a hearing or proceeding during the absence of the parent, guardian or custodian.

Iowa Code § 232.38(1)–(2); *see also id.* § 232.91(1) ("Any hearings or proceedings under this division subsequent to the filing of a petition shall not take place without the presence of the child's parent, guardian, custodian, or guardian ad litem in accordance with and subject to section 232.38."). Regarding the due-

process analysis of these sections, our court has held: "Where a parent receives notice of the petition and hearing, is represented by counsel, counsel is present at the termination hearing, and the parent has an opportunity to present testimony by deposition, we cannot say the parent has been deprived of fundamental fairness." *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991); *see also In re A.M.H.*, 516 N.W.2d 867, 870–71 (Iowa 1994) (noting that, in juvenile proceedings, due process must be satisfied, which generally encompasses the opportunity to be heard).

These due-process requirements were satisfied in the underlying proceedings. The father does not contest that he received notice of the petition to terminate, and the grounds on which the State was seeking termination; consequently, he was able to adequately assist counsel in preparing for the hearing. In the hearing, the father was given the opportunity to testify by phone, but declined. Additionally, he was represented by counsel, who was present throughout the hearing, cross-examined witnesses, and presented the father's case to the juvenile court. Pursuant to our statutes and case law, the proceedings were fundamentally fair; therefore, no due-process violations occurred. *See J.S.*, 470 N.W.2d at 52 (holding a parent does not have a constitutional, due-process right to be physically present at the termination hearing when he is incarcerated); *see also In re S.P.*, 672 N.W.2d 842, 846 (Iowa 2003) (noting that, in termination proceedings, due process requires notice and

an opportunity to be heard).[2]  Nor was the father prejudiced when the court denied his motion to continue.  *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) (noting a court is not under an obligation to grant a continuance, given it is important the child achieve permanency within a reasonable amount of time).

For these reasons, we affirm the order of the district court terminating the father's parental rights to his child, N.H.

**AFFIRMED.**

---

[2] Though this holding is in line with our statutory scheme and case law, we nonetheless note that best practices should allow for the parent to be present—either in person, telephonically, or through video conferencing—whenever practically feasible.