In the Interest of C.C. and S.N., Minor Children, R.N., Mother, Appellant.

No. 95–528.

Court of Appeals of Iowa.

July 25, 1995.

Mark J. Neary of Muscatine Legal Services, Muscatine, for appellant.

Thomas J. Miller, Attorney General, Gordon E. Allen, Deputy Attorney General, and John Hanson, student legal intern, for appellee State.

Neva Rettig Baker of Baker Law Office, Muscatine, for appellees minor children.

No appearance for F.N., father.

Considered by HAYDEN, P.J., and HABHAB and CADY, JJ.

HABHAB, Judge.

Rebecca and her husband have two children: S.N., born January 13, 1987, and C.C., born October 10, 1988. Rebecca's husband was physically abusive, as was her first husband. Rebecca has a history of psychological problems and has received counseling off and on since she was fifteen. She has been diagnosed with a borderline personality disorder. Rebecca also has a history of substance abuse.

Rebecca and the children's father separated and, in January 1992, the children were sent to live with relatives in Colorado. Rebecca was using drugs heavily at the time and did not feel she could adequately parent her children. S.N. and C.C. returned to Iowa because the relatives could not handle C.C.'s attention deficit and hyperactivity disorder.

In September 1992, Rebecca and the children began receiving services through the Department of Human Services (DHS). A petition to find the children in need of assistance (CINA) due to physical abuse by their father was dismissed. Those services ceased when the children, contrary to DHS recommendations, were sent to live with relatives in New York in December 1992. Rebecca wanted the children back, however, so they returned in late January 1993.

On February 21, 1993, Rebecca voluntarily placed S.N. and C.C. in foster care after S.N. was sexually abused by Rebecca's brother. An adjudication and dispositional order was filed on July 14, 1993. S.N. and C.C. were found CINA pursuant to Iowa Code section 232.2(6)(c)(2) (1993) (parent failed to properly supervise). The juvenile court found that Rebecca knew her brother had a proclivity for sexual abuse before leaving S.N. with him. In the dispositional order the juvenile court noted Rebecca's mental disorder and her need for treatment in at least four areas: substance abuse, individual therapy, domestic violence and parenting instruction. Rebecca was ordered to receive individual therapy consistent with recommendations of treating professionals.

A review order filed July 14, 1993, continued the children's placement in foster care. The court indicated Rebecca must involve her live-in boyfriend in domestic violence counseling and parent skills instruction or sever her ties with him by January 15, 1994, if she desired the children's return.

On July 8, 1994, Rebecca signed a consent to terminate her parental rights. A review order filed July 11, 1994, indicated Rebecca's consent to terminate and ordered the State to file a petition to terminate parental rights.

On August 4, 1994, Rebecca revoked her consent.

A termination hearing was held on November 7, 10, 23 and December 30, 1994. Rebecca testified that her live-in boyfriend had physically assaulted her within the past four weeks. She also testified that after she consented to the termination of her parental rights she learned that her borderline personality disorder affected her ability to parent. She then began individual therapy that focused on her personality disorder. She testified she revoked her consent to termination because she believed she could parent her children. On cross-examination, Rebecca admitted she had been offered individual counseling by DHS. Rebecca rejected the counseling at the time because she was essentially too busy to find a counselor.

The juvenile court terminated Rebecca's parental rights pursuant to section 232.116(1)(e) (1993) (child more than four years of age, previously adjudicated CINA, out of home for twelve months, and cannot presently be returned to parent's custody). Rebecca appeals.

■ **I. Scope of Review.** Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ There is a parental interest in the integrity of the family unit, but such interest is not absolute and may be forfeited by certain conduct. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The State has a duty to see that every child within its borders receives proper care and treatment, and must intercede when parents abdicate that responsibility. *In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988). Proper care and treatment includes, at a minimum, proper food, clothing, discipline, and supervision. *In re J.W.D.*, 456 N.W.2d 214, 217 (Iowa 1990).

■ Primary consideration is to be given to the physical, mental, and emotional condition and needs of the child. Iowa Code § 232.116(2) (1993). Best interests are determined by looking at the child's long term and immediate interests. *In re J.W.D.*, 456 N.W.2d at 217. "Insight for a determination of what the future likely holds for a child if returned to his or her parent can be gained from evidence of a parent's past performance." *Id.*

■ **II. Reasonable Services.** Rebecca contends the services offered by the State have not been reasonable. Specifically, she argues DHS did not provide her with counseling for her mental health disorder as was called for in the case permanency plan. We find reasonable services were offered.

Since the beginning of the implementation of the case permanency plan, Rebecca was offered individual counseling for her mental disorder. Initially, Rebecca was denied counseling at Allied Therapies due to attendance problems she had had with Allied prior to the CINA proceedings. When she was denied treatment, she was referred to another counselor. Rebecca chose not to seek help from this counselor since she claimed to know the counselor on a personal basis which she felt would interfere with a professional doctor-patient relationship. Rebecca failed to make her conflicts known to DHS and she failed to seek another referral from her physician, Allied, or DHS. Rebecca testified she was too busy to clear up this matter.

Rebecca received these services just prior to the time she had her rights terminated. She, however, was given the opportunity to receive these services long before she consented to a termination of her rights. Rebecca knew the terms of the case permanency plan and chose not to seek counseling. When locating a counselor became difficult, Rebecca chose not to tell DHS and she chose not to seek an additional referral. Fault for Rebecca's failure to receive treatment at an appropriate time cannot be placed with DHS. It was through Rebecca's own actions that this denial occurred.

■ **III. Statutory Criteria.** Rebecca contends the statutory criteria for a termination of parental rights has not been met.

Rebecca's rights were terminated pursuant to Iowa Code section 232.116(1)(e) (1993) which permits the juvenile court to terminate the parent-child relationship if the court finds all of the following have occurred:

(1) The child is four years of age or older.

(2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.

(3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The only element in dispute is the fourth element. Rebecca contends the State has not provided clear and convincing evidence the children cannot be returned.

The children were adjudicated CINA because Rebecca was unable to provide proper supervision and care for the children. These conditions still exist. Rebecca has continued in an abusive relationship with her live-in boyfriend which could potentially expose the children to abusive situations. In addition, there was a founded child abuse allegation against Rebecca concerning one of the children and it was shown Rebecca is frequently unable to provide adequate care during her visitations with the children. As a result, we find the State has provided clear and convincing evidence the children cannot be returned to Rebecca's care.

We affirm the termination of Rebecca's parental rights.

**AFFIRMED.**