# IN THE COURT OF APPEALS OF IOWA

No. 16-0085
Filed March 23, 2016

**IN THE INTEREST OF P.S.,**
**Minor Child,**

**N.S., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

A mother appeals the termination of her parental rights to her one-year-old daughter. **AFFIRMED.**

Charles E. Isaacson of Charles Isaacson Law P.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee.

Marshall W. Orsini of Carr and Wright, P.L.L.C., Des Moines, for minor child.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

While admitting she has acted with "manipulation and defiance" toward the Iowa Department of Human Services (DHS), Nicole nevertheless argues her one-year-old daughter, P.S., has not been harmed by her conduct. Nicole claims the record lacks sufficient support for the juvenile court's termination of their parent-child relationship under Iowa Code section 232.116(1)(h) (2015). Because we find clear and convincing evidence P.S. could not be returned to her mother's care at the present time, we affirm.

This family first came to DHS attention in the summer of 2014 after narcotics investigators executed a search warrant based on probable cause that methamphetamine was being sold from the home. Investigators found drug paraphernalia and small plastic bags caked with methamphetamine residue. Nicole was pregnant with P.S. at the time of the search, and the DHS removed her older child, L.S.[1] The juvenile court adjudicated L.S. as a child in need of assistance (CINA) in August 2014. The DHS implemented a safety plan that required the father of P.S. and L.S. to remain out of the home.

But the father did not follow the safety plan. In March 2015, then five-year-old L.S. reported his father had returned home. L.S. told a child protection worker he saw his parents hit each other and said the family often stayed at hotels because they were "running from DHS." The worker suspected both parents were using methamphetamine while caring for the children. The father admitted daily methamphetamine abuse, while Nicole denied knowing about his use and denied ever using herself. Nicole failed several times to provide a hair

---

[1] The mother's parental rights to L.S. are not at issue in this appeal.

sample for drug testing. When Nicole did submit to drug testing in June 2015, she tested positive for methamphetamine.

The DHS removed P.S. and L.S. from the parents' care on March 23, 2015, and placed them both with the same foster family.[2] On July 15, 2015, the juvenile court adjudicated P.S. as a CINA "due to the parents having issues with substance abuse, domestic violence, and unstable housing, the child cannot be returned to either parent." The parents were allowed supervised visitation for two hours, one time a week. The parents were not employed, did not have permanent housing, and did not comply with the DHS recommendations for substance abuse and mental health services.

On October 13, 2015, the State filed a petition to terminate the parental rights of both the father and mother in regard to P.S. The juvenile court held a hearing on December 3, 2015. On December 31, 2015, the court issued an order terminating the rights of both parents. The court concluded the parents "have failed to acknowledge issues with mental health, substance abuse, domestic violence or lack of stable housing. They cannot address issues they do not acknowledge exist." Only Nicole appeals.

We review child welfare proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We uphold an order terminating parental rights if the record contains clear and convincing evidence to support the statutory grounds. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing

---

[2] By the time of the termination hearing, P.S. had lived with the foster family for more months than she had been in the care of her parents.

when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence. *Id.*

Nicole raises a single issue on appeal: whether the State proved the statutory ground underlying the termination of her parental rights.[3] *See* Iowa Code § 232.116(1)(h). Under section 232.116(1)(h), the court may terminate the rights of a parent if the child is: (1) three years old or younger, (2) has been adjudicated a CINA under section 232.96, (3) has been out of the parent's custody for at least six of the last twelve months or the last six consecutive months, and (4) there is clear and convincing evidence that the child cannot be returned to the custody of the parent as provided in section 232.102 "at the present time."

Nicole contends the State presented insufficient evidence P.S. could not be immediately returned to her care. She points to evidence she completed a required mental health evaluation and was able to provide safe housing. She acknowledges the professionals in the case referred to her as "manipulative, dishonest, and blatantly defiant." But she contends "her biggest problem was that she did not do exactly what was asked of her by the Department, and was strong and resilient in expressing her personal belief the CINA case was unnecessary." She also focuses on the father's behavior—arguing his presence was "toxic to her and the children."

---

[3] The mother mentions the best interests of the child in the issue heading, but advances no substantive argument concerning Iowa Code section 232.116(2).

After reviewing the entire record anew, we find clear and convincing evidence P.S. could not be returned to Nicole's care at the present time. Two safety concerns loom large.

First, Nicole has not addressed her substance abuse problem despite testing positive for methamphetamine in June 2015. She has not undergone a substance abuse evaluation or received any treatment. Our supreme court has recognized that an unresolved drug addiction can render a parent unfit to raise children. *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). While she did complete a mental health evaluation, she only released the information shortly before the termination hearing. Nicole contended she did not need mental health counseling because she had no abnormal behaviors, but the evaluation indicated she had "symptoms of depressed mood, anxiety, panic attacks, crying, insomnia, loss of energy, poor appetite, racing thoughts, feelings of guilt, and tension through chest." The mental health evaluator also recommended Nicole receive a substance abuse assessment.

Second, Nicole has continued to expose her children to the threat of domestic violence. *See In re C.C.*, 538 N.W.2d 664, 667 (Iowa Ct. App. 1995) (upholding termination where mother's continuation of an abusive relationship potentially exposed the children to danger). During the CINA proceedings, Nicole denied instances of domestic violence between her and P.S.'s father. On appeal, Nicole contends she has separated herself from "the dangerous father." But the juvenile court did not believe the parents' testimony they planned to divorce. We give weight to that court's findings regarding witness credibility. *See D.W.*, 791 N.W.2d at 706. The record supports the juvenile court's

skepticism. The DHS progress report filed in November 2015 indicated the parents were living together and committed to continuing their relationship. In addition, at the time of the termination hearing, Nicole was expecting the couple's third child.

As evidence of her stability, Nicole points out she recently moved into a rental house by herself, while her husband lived with his father. Like the juvenile court, we have concerns about her ability to maintain this residence given that she is unemployed and not looking for work. Before this housing arrangement, Nicole and her husband were both staying with her father-in-law.

Finally, we reject Nicole's argument that her defiance and dishonesty with the DHS has not resulted in harm to P.S. In choosing to ignore the DHS recommendations and lie to providers about her drug use, domestic violence, and other issues, Nicole wasted precious time and squandered any opportunity to reunite with her daughter. In child welfare cases, we must follow the statutory time line for permanency and not force a child to wait for a parent to make mature decisions. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). "The legislature has established time frames to balance the need to provide parents with a reasonable opportunity to resume care of their [child] and the [child's] long term best interests." *A.M.*, 843 N.W.2d at 109. Clear and convincing evidence supported the juvenile court's decision that P.S. could not be returned to Nichole's care at the present time. We affirm the order terminating her parental rights to this child.

**AFFIRMED.**