**IN THE COURT OF APPEALS OF IOWA**

No. 15-2078
Filed April 27, 2016

**IN THE INTEREST OF K.P. AND E.P.,**
**Minor Children,**

**N.B., Mother,**
Appellant,

**M.P., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Marion County, Steven W. Guiter, District Associate Judge.

The mother and father appeal from an order terminating their respective rights in their children pursuant to Iowa Code chapter 232 (2015). **AFFIRMED ON BOTH APPEALS.**

Robert Warren Conrad of Conrad Law Office, Knoxville, for appellant mother.

Charles E. Isaacson of Charles Isaacson Law, P.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Will E. Sales III of Sales Law Firm, P.C., Des Moines, for minor children.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Natasha and Mitchell each appeal from an order terminating their respective parental rights in their children E.P. and K.P., ages six and four, respectively. The juvenile court terminated their parental rights pursuant to Iowa Code section 232.116(1)(f) and (h) (2015).

Our review is de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We will uphold an order terminating parental rights only if there is clear and convincing evidence establishing the statutory grounds for termination of the parent's rights. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.*

Termination of parental rights under Iowa Code chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40–41 (Iowa 2010). First, the court must determine if a ground authorizing the termination of parental rights under section 232.116(1) has been established. *See id.* at 40. Second, if a ground for termination is established, the court must apply the framework set forth in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude termination.

*See id.* at 41. The exceptions set forth in subsection three are permissive and not mandatory. *A.M.*, 843 N.W.2d at 113.

The district court terminated the parents' rights pursuant to Iowa Code section 232.116(1)(f) (as to the older child) and (h) (as to the younger child). As relevant here, termination pursuant to paragraphs (f) and (h) requires the State to prove the children could not be returned to the respective parent's care as provided in section 232.102. *See* Iowa Code §§ 232.116(1)(f)(4) and (h)(4) (both requiring proof the child cannot be returned to the parent's custody "as provided in section 232.102"). To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance." *See* Iowa Code § 232.102(5)(2); *see also In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The threat of probable harm will justify termination of parental rights, and the perceived harm need not be the one that supported the child's initial removal from the home. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

The children were removed from Natasha's care in February 2014 after the mother tested positive for methamphetamine. At the time of removal, the father was incarcerated for violating a protective order arising out of an incident of domestic abuse committed against the mother. The children were placed in the care of the maternal aunt. However, in the course of that placement, the children's older cousin sexually abused the children. The mother was present in the home when the abuse occurred, was informed of the abuse at the time, and asked the children not to disclose the abuse. After learning of the sex abuse, the

juvenile court modified placement and placed the children with the maternal uncle and his wife.

Mitchell was released from prison in April 2014, but he was quickly incarcerated for violating the protective order prohibiting contact with the mother. The father was released in November 2014. The no-contact order remained in place at the time of his release. The Iowa Department of Human Services (IDHS) directed the mother to have no contact with the father because of the long history of domestic abuse committed by the father against the mother. Nonetheless, the mother and the father immediately began seeing each other upon his release. They were untruthful with their service providers from November 2014 until May 2015. In May, Natasha finally admitted to her service provider that she and Mitchell had been in a relationship. Natasha said it ended several weeks prior when Mitchell sexually assaulted her. Upon inquiry, Mitchell admitted the parties were in a relationship. He stated the relationship ended several weeks prior when he learned the mother had been seeing other men while he was incarcerated and after. He denied he physically or sexually assaulted Natasha.

The children were adjudicated in need of assistance in March 2014. Despite receiving services, the parents had not addressed critical issues necessary to reunify with the children, and the State petitioned for termination of each parent's respective rights. As the termination hearing approached, Natasha had limited visitation with the children. She had an unapproved person attend a semi-supervised visit and instructed the children to lie about the visitor. On another occasion, she fell asleep during a visit with the children and could not be

awakened, leading IDHS to conclude she was using drugs. Natasha was asked to complete a medical evaluation and drug screen. The children's therapist recommended no further visitation until appropriate.

The children's mental health was negatively impacted by the parents and by continued visitation with the parents. The IDHS worker testified at the termination hearing. She testified the children were negatively impacted by visitation with their mother. Specifically, the children experienced toileting issues and outbreaks of hives. The termination report stated neither parent has "insight into the girls' diagnoses, therapeutic services, and overall well-being." The children's therapist testified the children have demonstrated reactions consistent with children who have been exposed to domestic violence and sexual abuse. The therapist testified the children were in need of permanency and had progressed a great deal in therapy since visitation with Natasha had been stopped. The therapist also testified the children's placement with the maternal uncle was meeting the needs of the children. The therapist also testified neither of the parents could provide the children with a safe, stable, and protective home.

We first address Natasha's appeal. She first contends the State failed to make reasonable efforts to provide her with reunification services. Relatedly, she contends the restrictions on her visitation were contrary to the duty to provide reunification services. The State contends the mother failed to preserve error with respect to these issues. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (noting that while the State has an obligation to make reasonable efforts to preserve the family, it is a parent's responsibility to demand other, different, or additional services in order to preserve error). We agree. Upon inquiry from the

juvenile court, Natasha failed to request additional or different services at two dispositional review hearings held in 2014 and two permanency review hearings held in 2015. She contends she complained about services to IDHS. The mother's complaints to IDHS are insufficient to preserve error for appellate review. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (stating a parent must make such a challenge "at removal, when the case permanency plan is entered, or at later review hearings" and voicing complaints to a social worker is not sufficient to preserve error).

Natasha contends the juvenile court erred by not addressing the fact she showed a reasonable likelihood of successful drug treatment and continued sobriety. Citing *In re G.B.*, No. 14-1516, 2014 WL 6682456 (Iowa Ct. App. Nov. 26, 2014), Natasha argues drug use alone is not sufficient to establish abuse and neglect. Citing the same case, she also argues evidence of drug use alone is insufficient to establish she suffered a severe substance-related disorder. The juvenile court did note Natasha's participation in substance abuse treatment over the life of the case, a fact weighing against the termination of her parental rights. However, Natasha's argument, as framed, is spurious. Here, the district court terminated Natasha's parental rights pursuant to section 232.116(f) and (h). The case upon which Natasha relies involves the termination of parental rights pursuant to section 232.116(1)(d) (authorizing the termination of parental rights upon a showing of physical abuse or neglect) and section 232.116(1)(*l*) (authoring the termination of rights upon a showing "the parent has a severe substance-related disorder and presents a danger to self or others as evidenced

by prior acts"). The case and statutory provisions upon which Natasha rely have no application here.

Other than her argument regarding continued sobriety, the mother does not challenge the sufficiency of the evidence establishing the statutory ground authorizing termination of her parental rights. On de novo review, however, we independently conclude there is sufficient evidence establishing the statutory grounds authorizing termination of the mother's rights. Natasha exposed the children to the risk of domestic violence by continuing her relationship with the children's father and concealing the relationship from her service providers. The risk of harm is heightened in this case because the father was physically abusive to K.P. and E.P.'s half-brother. A child cannot be returned to the care of the mother where her abusive paramour presents a risk of harm to the children. *See, e.g.*, *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *2 (Iowa Ct. App. May 6, 2015) (affirming termination of rights where the mother failed to attend classes to address domestic violence and continued to maintain "regular, inappropriate, and harmful contact" with the abusive father); *In re J.F.*, No. 13-1956, 2014 WL 667789, at *2 (Iowa Ct. App. Feb. 19, 2014) (affirming termination of rights pursuant to paragraph (h) where the mother exposed the child to domestic violence and unstable relationships); *In re D.H.*, No. 13-1693, 2014 WL 250256, at *2 (Iowa Ct. App. Jan. 23, 2014) (affirming termination of rights where mother was involved in violent relationships); *In re C.C.*, 538 N.W.2d 664, 667 (Iowa Ct. App. 1995) (affirming termination where the mother's relationship with abusive boyfriend created a risk of harm to the children).

Natasha's response to the sexual abuse perpetrated against the children is troubling. She denied the sexual abuse and was uncooperative in therapy regarding the issue. The failure to acknowledge and address the abuse precludes return of the children to the mother. *See In re S.O.*, 483 N.W.2d 602, 603-04 (Iowa 1992) (upholding termination of mother's parental rights when record demonstrated she was unable to protect child from future sexual abuse by father and was dishonest about his presence in the home); *In re T.J.O.*, 527 N.W.2d 417, 421 (Iowa Ct. App. 1994) ("It is vital in a juvenile matter the parent(s) recognize abuse occurred. The requirement that the parents acknowledge and recognize the abuse before any meaningful change can occur is essential in meeting the child's needs.").

With respect to Mitchell, we conclude the State has proved the grounds for termination by clear and convincing evidence. At the time of the termination hearing, the father had criminal charges pending for stalking, third offense; harassment in the third degree; and violating a no contact order (eleven counts). At the termination hearing, Mitchell admitted he was not able to take custody of the children at that time. Given the circumstances, that is sufficient evidence authorizing the termination of the father's rights. *See, e.g., In re D.R.*, No. 15-1968, 2016 WL 1129385, at *4 (Iowa Ct. App. Mar. 23, 2016) (affirming termination where the mother admitted the children could not be returned to her care at the time of the termination hearing); *In re M.R.*, No. 14-1642, 2014 WL 7343520, at *2 (Iowa Ct. App. Dec. 24, 2014) (same); *In re Z.B.*, No. 13-1406, 2014 WL 667596, at *2 (Iowa Ct. App. Feb. 19, 2014) (same); *In re. G.S.*, No. 12-2258, 2013 WL 751298, at *2 (Iowa Ct. App. Feb. 27, 2013) (same); *In re. K.B.*,

No. 12-1299, 2012 WL 4903052, at *4 (Iowa Ct. App. Oct. 17, 2012) (same); *In re H.L.*, No. 07-1126, 2007 WL 2710968, at *2 (Iowa Ct. App. Sept. 19, 2007) (same).

The father also contends the juvenile court should have granted a six-month extension of time to work toward reunification. To defer permanency for six months, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). On de novo review, we conclude an additional six months would not obviate the need for removal. The father missed fifty percent of the children's therapy appointments and last attended therapy with the children in May 2015. The children have been removed from their parents' care since February 2014, but the father has not addressed his domestic violence issues. Related, the father failed to address his criminal behavior. At the time of the termination hearing the father had new criminal charges pending potentially resulting in incarceration and further preventing him from establishing stability to parent these children. The father's criminal behavior during the pendency of this case is representative of the lengthy criminal history that has prevented him from providing stability for these children. Although past conduct is not determinative of future conduct, it is probative. *See In re K.F.*, No. 14–0892, 2014 WL 4635463, at *4 (Iowa Ct. App. Sept. 17, 2014) ("What's past is prologue."); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct is instructive in determining future behavior); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (concluding a

parent's past behavior is indicative of the quality of care the parent is capable of providing in the future).

Neither parent directly challenges whether termination of their respective rights is in the best interests of the children. As a general rule, when the statutory grounds for termination of parental rights have been proved, the termination of parental rights is in the best interests of the children. *See In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa 1992). However, there is no all-encompassing best interest standard that can resolve any particular case. The court must look at the particular facts and circumstances of each case, determining the children's short-, intermediate-, and long-term best interests. See Iowa Code § 232.116(2) (identifying relevant considerations); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (stating the court most look to immediate- and long-term interests).

On de novo review, we conclude the termination of rights was in the best interests of the children. The children are in therapy. The therapy has progressed a great deal since the time visitation with the mother ended. The children are thriving in the care of their foster family.

With respect to the third step of the analysis, the father contends the parent-child bond should serve to preclude the termination of his parental rights. Section 232.116(3)(c) provides the court may avoid termination if "there is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child would be disadvantaged by termination, and whether the disadvantage overcomes" the father's inability to provide for the children's

developing needs. *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010); *see also* Iowa Code § 232.116(2) (setting forth the factors in determining the child's best interests). Here, the father has a lengthy criminal history that has prevented him from providing stability for and parenting to his children. *See, e.g.*, *In re Z.S.*, No. 04-1156, 2004 WL 2006166, at *1 (Iowa Ct. App. Sept. 9, 2004) (affirming termination of rights where father had long criminal history interfering with his ability to provide care for his children). During the pendency of this case, he was charged with additional criminal conduct, unresolved at the time of the termination hearing.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41. "It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778.

**AFFIRMED ON BOTH APPEALS.**