# IN THE COURT OF APPEALS OF IOWA

No. 17-0346
Filed June 7, 2017

**IN THE INTEREST OF K.L., M.L., and O.S.,**
**Minor Children,**

**K.L., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

Mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2016).  **AFFIRMED.**

Taryn R. Purcell of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Patricia M. Reisen-Ottavi of Ottavi Law Firm, Dubuque, guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Methamphetamine is a scourge. This is yet another appeal from an order terminating the parental rights of a long-time user. In this case, the juvenile court terminated Kara's parental rights in her three children pursuant to Iowa Code section 232.116(1)(g) and (*l*) (2016). At the time of the termination hearing, the mother was in jail after being charged with child endangerment after two of the children at issue tested positive for methamphetamine. On appeal, the mother does not challenge the sufficiency of the evidence establishing the grounds for termination of her parental rights. Instead, she contends the juvenile court should have granted her more time to reunify with the children, and she contends the juvenile court should have forwent termination of her parental rights due to the strength of the parent-child bond.

"We review proceedings terminating parental rights de novo." *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). The statutory framework is well established. Pursuant to section 232.116(1), the State must prove a statutory ground authorizing the termination of a parent's rights. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Second, pursuant to section 232.116(2), the State must prove termination of parental rights is in the best interest of the child. *See id.* Third, if the State has proved both the existence of statutory harm and termination of a parent's rights is in the best interest of the child, the juvenile court must consider whether any countervailing considerations set forth in section 232.116(3) should nonetheless preclude termination of parental rights. *See id.* These countervailing considerations are permissive, not mandatory. *See A.M.*, 843 N.W.2d at 113.

"The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011) (citing *In re C.L.H.*, 500 N.W.2d 449, 454 (Iowa Ct. App. 1993)).

Kara contends the district court should have deferred permanency for an additional six months to afford her more time to seek reunification with her children. To defer permanency for six months, the juvenile court was required to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Among other things, there are two salient facts that lead us to conclude the causes giving rise to removal will not be resolved by the end of the additional six-month period.

First, Kara has demonstrated a long history of involvement in violent and otherwise inappropriate relationships posing an appreciable risk of adjudicatory harm to the children. Throughout the course of this proceeding, Kara was instructed to cease contact with her abusive paramour, but she refused to do so. Neighbors heard consistent arguing and fighting between Kara and her paramour, who was not supposed to be present in the home, in the presence of the children. On at least one occasion, the paramour physically abused Kara in front of the children. When the paramour was incarcerated for a different assault on Kara, she brought other men into the home, one of whom overdosed in the home. In similar circumstances, we have concluded the termination of a parent's rights was warranted. *See, e.g., In re I.M.*, No. 16-0685, 2016 WL 4036256, at *1

(Iowa Ct. App. July 27, 2016) ("A child cannot be returned to the care of the mother where her abusive paramour presents a risk of harm to the children."); *In re K.P.*, No. 15-2078, 2016 WL 1703081, at *3 (Iowa Ct. App. Apr. 27, 2016) (affirming termination on ground child could not be returned to the mother's care at the time of the hearing where mother had surreptitiously recommenced romance with abusive paramour); *In re S.C.*, No. 15-0262, 2015 WL 2089743, at *2 (Iowa Ct. App. May 6, 2015) (affirming termination of rights where the mother failed to attend classes to address domestic violence and continued to maintain "regular, inappropriate, and harmful contact" with the abusive father); *In re J.F.*, No. 13-1956, 2014 WL 667789, at *2 (Iowa Ct. App. Feb. 19, 2014) (affirming termination of rights pursuant to paragraph (h) where the mother exposed the child to domestic violence and unstable relationships); *In re D.H.*, No. 13-1693, 2014 WL 250256, at *2 (Iowa Ct. App. Jan. 23, 2014) (affirming termination of rights where mother was involved in violent relationships); *In re C.C.*, 538 N.W.2d 664, 667 (Iowa Ct. App. 1995) (affirming termination where the mother's relationship with abusive boyfriend created a risk of harm to the children). We reach the same conclusion here.

Second, and more important, Kara has a decade-long history of methamphetamine abuse punctuated by periods of sobriety. She sought treatment on multiple occasions during the pendency of this case and relapsed. Kara's methamphetamine abuse poses a risk of adjudicatory harm to the children. The children have tested positive for the drug. There is no reason to believe an additional six months' time will resolve an addiction that has lasted more than a decade. Under the circumstances, termination of Kara's parental

rights was warranted.  *See, e.g., In re J.A.*, No. 16-1512, 2016 WL 6396074, at *2 (Iowa Ct. App. Oct. 26, 2016) (affirming termination despite mother's request for additional time where mother "failed to address her substance-abuse issues over the course of several years" and "now faces an impending criminal indictment for methamphetamine distribution"); *In re R.P.*, No. 16-1154, 2016 WL 4544426, at *2 (Iowa Ct. App. Aug. 31, 2016) (affirming termination of parental rights despite father's request for more time where father had a history of substance abuse and there was "nothing to indicate he could resolve the problem and provide constant and reliable care for the child outside a supervised setting"); *In re C.M.*, No. 14-1140, 2015 WL 408187, at *4–5 (Iowa Ct. App. Jan. 28, 2015) (affirming termination of parental rights where the parents sought more time but evidence established they were unlikely to resolve their substance abuse problems); *In re H.L.*, No. 14-0708, 2014 WL 3513262, at *4 (Iowa Ct. App. July 16, 2014) (affirming termination of parental rights where the father had history of substance abuse); *In re J.L.*, No. 02-1968, 2003 WL 21544226, at *3 (Iowa Ct. App. July 10, 2003) (concluding relapse of parent despite offer of services supported termination of parental rights); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[I]n considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future.  Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.").

Kara next contends the strength of the bond between her and the children justifies preservation of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). Section 232.116(3)(c) provides the court may avoid termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* The factor is permissive, and the court may use its discretion in deciding whether to apply the factor to continue the parent-child relationship. *See A.M.*, 843 N.W.2d at 113. Our consideration is not merely whether there is a parent-child bond, "our consideration must center on whether the child would be disadvantaged by termination, and whether the disadvantage overcomes" the parent's inability to meet the needs of the child. *See D.W.*, 791 N.W.2d at 709.

We cannot conclude any disadvantage to the children caused by the termination of Kara's parental rights is more significant than the ongoing harm to which the children would be subjected if placed in Kara's care. "The legislature has categorically determined 'the needs of a child are promoted by termination of parental rights' if the grounds for termination of parental rights exist." *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa Ct. App. 1992) (quoting *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990)). Here, the risk of harm to the children is significant, including exposure to domestic violence and methamphetamine. Kara has demonstrated over the course of a decade her inability to resolve the issues causing harm to her children. The children are thriving in their current placements.

We cannot ask these children to continuously wait for Kara to become a stable parent. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) ("It is well-

settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *P.L.*, 778 N.W.2d at 41)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009) (citing *In re J.L.W.*, 570 N.W.2d 778, 781 (Iowa Ct. App. 1997)). We have now reached such a point.

We affirm the order terminating Kara's parental rights in her children.

**AFFIRMED.**