# IN THE COURT OF APPEALS OF IOWA

No. 17-0917
Filed September 13, 2017

**IN THE INTEREST OF A.W.,**
**Minor Child,**

**J.W., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


        The mother appeals from the order terminating her parental rights to her child, A.W., born in March 2015.  **AFFIRMED.**


        Monica L. Cameron of Cameron Law Firm, P.C., Des Moines, for appellant mother.

        Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

        Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor child.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

The mother appeals from the order terminating her parental rights to her child, A.W., pursuant to Iowa Code Section 232.116(1)(g) and (h) (2017). The mother claims: (1) the State failed to prove the statutory factors; (2) the court erred in denying a six-month permanency extension; (3) termination is not in the best interests of A.W.; (4) the mother's bond with the child precludes termination; (5) the juvenile court erred in denying the mother's motion to continue; and (6) the juvenile court erred in denying the mother's request to appoint new counsel. We affirm.

**I. Background Facts and Proceedings.**

In March 2015, A.W. came to the attention of the Iowa Department of Human Services (DHS) upon a report the child was born with methamphetamine in their system. On March 13, a removal order was issued, and A.W. was placed with relatives.[1] On March 23, the court held a removal hearing and the mother stipulated to the continued removal of A.W. However, the court placed A.W. in foster care, as the relatives refused to provide requested drug screenings. In its removal order, the court found the mother had a history of substance abuse.

On April 20, A.W. was adjudicated as a child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2015). At the adjudication hearing, the mother stated she had relapsed on alcohol and methamphetamine since the removal hearing. The mother also reported she

---

[1] The juvenile court also terminated A.W.'s father's parental rights. The father is not a party to this appeal.

was asked to leave her rehabilitation facility temporarily because a breathalyzer test was positive for alcohol.

On May 22, the mother requested A.W.'s return to her custody in a contested dispositional hearing. The juvenile court found the mother was participating in rehabilitative services and making positive steps towards recovery. The court stated, "The court does not want this finding to detract from the mother's recent progress and believes the child will be returned . . . if she continues to comply with services and maintains sobriety." The juvenile court, however, confirmed out-of-home placement for A.W in its order, citing the mother's "substantial history of substance abuse issues" and recent alcohol and methamphetamine relapses. On September 10, the court continued the scheduled permanency hearing, stating a "hearing is not required and the mother has continued to make progress and expanded visitation has started. All parties are in agreement to schedule the hearing from permanency to a review hearing."

On September 25, the State filed a motion to modify disposition requesting A.W. be returned to the mother's care. The State claimed, "[T]he mother has addressed the safety concerns that led to the removal of the child from her care. The mother has fully cooperated and participated in services. She is currently residing at Hope Ministries." On September 28, the court granted the State's motion and placed A.W. in the custody of the mother "so long as mother resides at Hope Ministries." The court also found the child could not be placed with the father due to ongoing substance-abuse issues and unstable housing.

Custody of A.W. remained with the mother, and she transitioned from a rehabilitative housing facility to independent housing. However, in August 2016,

the State received information from DHS that the mother tested positive for methamphetamine.[2] The State filed another motion to modify placement on August 25 and recommended placement with A.W.'s prior foster family. In its motion the State claimed, "DHS has received results for mother's sweat patch from August 10, 2016, that was positive for methamphetamine. There are additional concerns regarding violations of the [no-contact order] between mother and father when father became incarcerated at the Polk County Jail towards the end of June 2016." The court granted the State's motion on August 25, and A.W. was again placed in foster care.

A review hearing took place on September 22. The court adjusted its findings on the mother's rehabilitative progress as follows:

> This matter was last reviewed early May of 2016, and at that time mother had successfully completed the Hope Ministry residential program and had obtained independent [housing] for herself and the child. At the time, the Court was not made aware of any concerns but reports received today indicate Hope Ministry had reported in April that mother was not consistently attending programing. At the time, mother was expected to be meeting weekly for aftercare services. Mother only attended two times in April, had one random contact in May with her treatment provider, and one contact in June.

The mother also had troubling contact with the father. In June 2016, the police were called on two occasions when the father violated the no-contact order between himself and the mother. The juvenile court described the events:

> In June of 2016, the police were called to mother's residence on two separate occasions due to father appearing and violating the

---

[2] During the November 13 dispositional hearing the court became aware of an issue at the mother's residential rehabilitation facility. According to DHS reports, the mother was asked to leave the facility with the child overnight due to attitude issues with the staff. DHS was not notified until after the child and mother left the facility. The mother was allowed to return to the facility, and the court ordered DHS to adopt a plan in the event the mother was required to leave the facility again.

no contact order. The first incident occurred on June 5, 2016, where father appeared at the apartment, kicked the door, called mother demeaning names, and punched in the window. The child was present in the home during this incident. Mother called the police and father fled the scene. A second incident occurred on June 17, 2016 . . . . Father appeared with a large kitchen knife in hand and accused mother of being in a relationship with [another man]. The man fled the home fearing for his safety and called the police. It is unclear where the child was during this incident. Father was arrested on June 20, 2016, [and is] currently in jail on charges related to these incidents. . . . On June 28, 2016, there was a phone call between the parents while Father was in jail. . . . During this call, Mother puts the child on the phone to speak with Father. The parents have another phone call the next day and fight throughout the call. Father is repeatedly verbally abusive to Mother but remains on the phone anyway. . . . The child is also present during this call.

The court also found the mother relapsed on methamphetamine in August 2016 when she and A.W. tested positive for methamphetamine. The court ordered A.W. to remain in out-of-home placement, and a permanency hearing was set for January 5, 2017.

On November 18, the mother was arrested on a drug-related charge.[3] The mother remained in jail until her release in January 2017. Following a contested permanency hearing, the juvenile court found the mother stopped engaging in substance-abuse treatment after her August 2016 relapse when she disagreed with the findings of her substance-abuse evaluation. The court ordered the child remain in out-of-home placement and set a termination hearing for March 2017.

At the termination hearing, the mother's attorney requested a continuance, claiming she misunderstood the hearing order and inaccurately informed the mother the termination hearing was cancelled. The mother eventually showed

---

[3] The criminal charges were unresolved at the time of the termination hearing.

up, and the juvenile court denied the mother's motion to continue. At the mother's request, the mother's attorney also made a motion to withdraw. The court denied the motion, stating another delay in the two-year proceeding was not in A.W.'s best interest and current court-appointed counsel had the necessary knowledge of a lengthy case to provide adequate representation.

At the termination trial, the mother testified she is engaged in several services at a residential treatment facility. She stated she is focused on recovering from addiction for herself and A.W. and she can effectively parent A.W. during recovery. Although the mother is currently unemployed, she testified she can provide for A.W.'s physical and emotional needs. She testified that she is not going to engage in a relationship with violent people who have caused her harm in the past. She also asked the court for a six-month permanency extension in the event A.W. could not be returned to her care at the time of the termination trial.

A.W.'s guardian ad litem (GAL) also testified at the termination trial. The GAL stated termination of the mother's rights is in the best interests of A.W. based on the mother's substance abuse history and the child's success with their foster family.

On May 31, the juvenile court issued an order terminating the mother's rights to A.W. pursuant to Iowa Code Section 232.116(1)(h) and (g). The juvenile court held, "Despite the services offered, [the mother] has [not] corrected the situation that lead to the removal and subsequent adjudication [of A.W.]. As a result the child cannot be returned to the custody of [the mother] . . . due to [the mother's] unresolved domestic violence and substance abuse issues."

The mother appealed.

**II. Standard of Review.**

We conduct a de novo review of proceedings terminating parental rights. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under Iowa Code section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.* We give weight to the factual determinations of the juvenile court, particularly regarding the credibility of witnesses, although we are not bound by them. *Id.* The primary consideration of our review is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

"We review a motion for continuance under an abuse of discretion standard and will only reverse if injustice will result to the party desiring the continuance." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996).

Our review of the district court's denial of counsel's motion to withdraw is for an abuse of discretion. *See State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995). We find an abuse of discretion only upon a showing the court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Vanover*, 559 N.W.2d 618, 627 (Iowa 1997).

**III. Discussion.**

The mother argues the statutory grounds for termination were not met, a six-month permanency extension should have been granted, and termination is

not in the best interests of A.W.  The State argues termination is appropriate due to the mother's unresolved substance-abuse and domestic-violence issues.

### a. Statutory Grounds.[4]

We review termination orders using the following three-step analysis:

> The first step is to determine whether any ground for termination under section 232.116(1) has been established.  If we find that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights.  Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any [permissive factors] in section 232.116(3) apply to preclude termination of parental rights.

*In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).

The mother claims the court erred in finding her parental rights should be terminated under Iowa Code section 232.116(1)(h)[5] because the child could have been returned to her at the time of termination.  The mother argues she has developed a strong bond with A.W., and she resided in a stable rehabilitation facility that meets all of A.W.'s needs.  The State argues termination is

---

[4] "When the juvenile court terminates parental rights on more than one statutory ground, we need only find grounds to terminate under one of the sections cited by the juvenile court to affirm."  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

[5] The relevant portion of the code permits the court to terminate parental rights if it finds all of the following:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h)(1)–(4).

appropriate because A.W. could not be returned to the mother's care based on the mother's historical substance-abuse issues. We agree with the State.

It is undisputed that the first three elements of the statute are satisfied. At the time of the termination hearing, A.W. was approximately two years old. The juvenile court adjudicated A.W. as CINA in April 2015. In March 2015, the State removed the child. A.W. was returned to the mother's care, but A.W. was removed again on August 25, 2016. The child has not returned to the mother's care since the August removal, and the termination trial took place on March 14, 2017. The remaining issue is whether A.W. could have been returned to the mother at the time of termination.

There is clear and convincing evidence A.W. could not be returned to the mother's custody at the time of the termination hearing. The mother has struggled with methamphetamine addiction, and A.W. has felt the harm of the mother's addiction since A.W. tested positive for methamphetamine at birth. A.W. also tested positive for methamphetamine when the mother relapsed in August 2016. A.W. was exposed to domestic violence while the child was in the mother's care. *See In re C.C.*, 538 N.W.2d 664, 667 (Iowa Ct. App. 1995) (upholding termination where mother's continuation of an abusive relationship potentially exposed the children to danger). The mother's inability to maintain sobriety while A.W. is in her care after completing treatment supports the district court's finding that placement with the mother is not in A.W.'s best interests. *See In re A.B.,* 815 N.W.2d 764, 778 (Iowa 2012) ("Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the

future care that parent is capable of providing.'" (citation omitted)); *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting . . . must be constant, responsible, and reliable."). We agree with the district court that A.W. could not be returned to the mother's care at the time of the termination hearing.

The mother next claims the court improperly denied her request for a six-month permanency extension. The mother argues she has made significant progress in addressing the concerns that led to removal.

The juvenile court may grant an extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). The mother's history in treatment does not support a finding that the need for removal will no longer exist at the end of a six-month extension. Although the mother was successfully discharged from a residential treatment facility, she relapsed shortly thereafter, exposing A.W. to domestic violence and methamphetamine. While we commend the mother's efforts for continuing treatment, last-minute efforts in this case are insufficient to demonstrate a need for reunification. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Time is a critical element. A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting."). At some point, the court's patience with the mother must succumb to the child's wellbeing. *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). Based on the above, we cannot conclude the need for removal will cease to exist at the end of a six-month extension.

**b. Best Interests.**

The mother next argues that termination is not in the best interests of the child, in part, because of the strong bong she developed with A.W. Even when the above statutory grounds are satisfied, the juvenile court must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

There is little evidence that retaining the mother's parental rights is in the best interests of A.W. Despite the positive interactions between the mother and A.W. during visitations, the mother's methamphetamine use illustrates the mother's willingness to put her own perceived needs before that of her child's. The child's positive tests for methamphetamine at birth and in August 2016 reveal the extent of harm to the child.

It is also difficult to tell from the record whether the mother can provide a stable home for A.W. At the time of the termination trial, she was participating in a residential treatment facility. However, the mother relapsed shortly after completion of the same residential treatment program in 2015, and the mother refused to reengage in treatment after her August 2016 relapse. See *A.B.*, 815 N.W.2d at 778. Permanency and stability are essential elements of A.W. needs. *See J.E.*, 726 N.W.2d at 802 (Cady, J., concurring specially). It is in the best interests of the child's safety, long-term physical and mental growth, and emotional needs to terminate the mother's parental rights.

**c. Permissive Factors.**

The mother argues the juvenile court should not have terminated her parental rights because the mother developed a strong bond with the child. Iowa

Code section 232.116(3) allows the court to decline termination if termination "would be detrimental to the child at the time due to the closeness of the parent-child relationship." *Id.* § 232.116(3)(c). The statutory factors are permissive, not mandatory. *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *Id.*

Here, the closeness of the parent-child relationship does not override the need for termination. A.W. was removed at birth. At the time of the termination proceedings, A.W. was approximately two years old. Additionally, A.W. experienced success with the current foster family. The mother's substance-abuse issues, as outlined above, outweigh any bond that exists between A.W. and the mother. The child has yet to experience permanency in its lifetime, and A.W. deserves a stable environment at such a young age. *See J.E.*, 726 N.W.2d at 802 (Cady, J., concurring specially). We affirm the juvenile court's termination of the mother's parental rights.

### d. Motion to Continue and Motion to Withdraw.

The mother argues the juvenile court erred in denying her motion for continuance. She claims it is an injustice to deny the continuance since the mother is defending a constitutional right. "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *C.W.*, 554 N.W.2d at 281.

The hearing was scheduled for March 14, 2017. The mother asked for a continuance on the day of the termination trial due to the alleged

miscommunication about the hearing date. However, the mother moved her criminal hearing on the same date in order to accommodate the termination hearing, which confirms her understanding of the hearing date. The mother's rights were not affected by the denial of the continuance because she was present at the hearing and represented by counsel. *See In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991) ("Where a parent receives notice of the petition and hearing, is represented by counsel, counsel is present at the termination hearing, and the parent has an opportunity to present testimony by deposition, we cannot say the parent has been deprived of fundamental fairness."). Moreover, the hearing was scheduled two years after the child was removed, and the child was exposed to methamphetamine twice during the proceedings. "A sense of urgency exists in termination cases due to the importance of stability in a child's life. Due to this urgency, the trial court is not obligated to grant a parent's motion for continuance because 'children simply cannot wait for responsible parenting.'" *C.W.*, 554 N.W.2d at 281 (quoting *L.L.*, 459 N.W.2d at 495). We see no injustice in the juvenile court's denial.

The mother also claims the juvenile court erred in denying the mother's request for new counsel. She argues the court should have consulted with the mother to determine if there was sufficient cause to grant her request for new counsel. A.W. was removed two years before the trial. The mother's counsel had extensive knowledge of lengthy proceedings. Appointing a new attorney minutes before the termination hearing would delay the proceedings and cause more hardship for A.W. *See In re M.B.*, No. 09-0409, 2009 WL 1913699, at *2 (Iowa Ct. App. July 2, 2009) (affirming the juvenile court's denial of the mother's

motion to continue one week before the termination hearing where "appointing new counsel would cause extensive delays in a case already four and a half years old"); *In re Z.E.P.*, No. 03-0616, 2003 WL 21459565, at *2 (Iowa Ct. App. June 25, 2003). The court did not abuse its discretion in denying the mother's request to appoint a new attorney on the hearing date.

## IV. Conclusion.

Termination of the mother's parental rights to A.W. under Iowa Code section 232.116(1)(h) is supported by clear and convincing evidence and is in the child's best interest because A.W. could not be returned to the mother's home at the time of termination. The conditions that led to removal would not be resolved if the juvenile court granted a six-month permanency extension. Termination is also in A.W.'s best interests because the child was exposed to domestic abuse and methamphetamine while in the mother's care. We also agree with the juvenile court that termination is not precluded by the permissive factors. Finally, the court did not err denying the mother's motion to continue and motion to appoint new counsel.

**AFFIRMED.**