**In the Interest of J.S., J.S., and N.S., Minor Children.**

**Appeal of G.S., Father, and B.S., n/k/a B.B., Mother.**

**No. 90–1034.**

Court of Appeals of Iowa.

April 2, 1991.

Steven J. Holwerda of Selby, Updegraff, Smith & Holwerda, Newton, for appellant father.

James W. Cleverley, Jr., Newton, for appellant mother.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Randal B. Caldwell, Newton, guardian ad litem for the children [appellee].

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Judge.

This case involves three children: two boys born in July 1984 and January 1986, and a girl born in February 1987. All three children have the same mother, B.S. The two younger children have the same father, G.S. G.S. was married to the mother for several years (although the marriage has since been dissolved), and he functioned as a stepfather to the oldest child. The oldest child's natural father has never been involved in the life of his child.

All three children were adjudicated children in need of assistance (CINA) in June 1988. All parties stipulated the children were in need of assistance as defined by sections 232.2(6)(b) (parent imminently likely to abuse or neglect), (6)(c)(2) (child has suffered or is imminently likely to suffer harmful effects as a result of lack of supervision), and (6)(k) (parent desires to be relieved of care and custody). Iowa Code (1989 Supp.). All three children have been in foster care continuously since October 1988.

In February 1990 the State filed a petition to terminate the parental rights of the mother (B.S.), the father of the two younger children (G.S.), and the father of the oldest child. After a hearing, the juvenile court did terminate the parental rights of all three of these persons with regard to all three children.

With respect to the father of the oldest child, the juvenile court relied on the grounds of abandonment and desertion. This man has not appealed.

With respect to the mother and G.S., the juvenile court relied on Iowa Code sections 232.116(1)(e) and (1)(g) (1989 Supp.), which permit termination if children cannot safely be returned to a parent's care after a CINA adjudication and extended foster care. Additionally, the juvenile court relied on Iowa Code section 232.116(1)(c) (1989 Supp.), which permits termination if circumstances leading to prior physical abuse or neglect have not been corrected in spite of social service assistance. The mother and G.S., the father of the two younger children, separately appeal the termination order.

I. *Scope of Review.* Appellate review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa

1984), *cert. denied*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App.1988) (citing to *Dameron*, 306 N.W.2d at 745); *see also In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987).

■ II. *B.S.* The mother challenges the sufficiency of the evidence to support the termination of her parental rights under any of the statutes relied upon. B.S. concedes the court properly found the statutory requirements were satisfied relating to the ages of the children, their prior CINA adjudications, and the time they have been placed outside of the home. *See* §§ 232.116(1)(e)(1)–(3) and 232.116(1)(g)(1)–(3). She contends, however, the evidence failed to establish that the children could not safely be returned to her care, *see* §§ 232.116(1)(e)(4) and 232.116(1)(g)(4), or that the conditions leading to previous abuse had not been corrected. *See* § 232.116(1)(c)(2). She also contends the evidence failed to establish that the termination of her parental rights would be in the children's best interests. In all of these arguments, she alleges that in the months before the termination hearing she had greatly improved both her parenting

skills and her general level of responsibility.

We disagree with B.S.'s contention that there is not clear and convincing evidence that the children could not be returned to her home because there was a likelihood conditions still existed which would justify the adjudication of the children as children in need of assistance. This court acknowledges the strides B.S. has made in taking more control of her life: she has divorced her abusive husband and intends to keep him out of her life, she has completed a substance abuse program, and maintained employment and housing. We encourage B.S. to continue in her efforts in "dealing with [her] problems."

Unfortunately, B.S. testified it is not now an appropriate time for her to have custody of her children. Nor is B.S. able to state when she might be ready to consider taking the children back into her home. At the time of the termination hearing, and after many services having been offered to her, B.S. continued to feel overwhelmed by the responsibilities of parenting. We also note that even though B.S. states an intention to not be involved with G.S. in the future, she believes G.S. will continue to invade her life and, as a consequence, she fears for her children's emotional and physical safety. Under these circumstances, it is clear the children cannot be returned to their mother's care without the threat of harm.

The children are adoptable at this time and at least one family has expressed an interest in adopting all three of the children. These children deserve the opportunity to establish permanency and stability. These children should not be forced to endlessly await the maturity of their mother. *In re T.D.C.*, 336 N.W.2d 738, 744 (Iowa 1983). We find it is in the children's best interests that the impediments to their forming new family relationships should be swept away. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990). We affirm the juvenile court's decision to terminate B.S.'s parental rights.

■ III. *G.S.* In his appeal, G.S. also challenges the sufficiency of the evidence to support the termination of his parental

rights. G.S. cannot argue subsections 232.-116(1)(e)(1)–(3) and 232.116(1)(g)(1)–(3) have not been satisfied. It is also clear that at the present time the children cannot be returned to the custody of G.S. because he is incarcerated. Therefore, the statutory requirements for termination are satisfied and we affirm the termination of his parental rights.

■ Additionally, this court notes G.S. refuses to accept personal responsibility for his actions. He argues the CINA adjudications were directed solely toward the mother's deficiencies rather than his own. He takes no responsibility for not being available to the children due to his incarceration. He denies he has ever been violent toward B.S. even though he pleaded guilty to tampering with a witness. This conviction arose because G.S. assaulted and threatened B.S. in an effort to keep her from testifying against him on charges that he previously assaulted B.S. He denies the children ever witnessed physical confrontations between himself and B.S. even though social workers testified the children had obviously witnessed family violence. G.S. refuses to acknowledge the effects his violent behavior have had on his spouse, his children, and his freedom. He argues there is little evidence about his parenting abilities and but for his incarceration he would have been a good parent. We, however, cannot ignore that G.S. has repeatedly engaged in irresponsible and violent behavior resulting in his absence from his children's lives. G.S.'s past performance provides insight for his potential future performance as a parent and that potential does not bode well for the children's well-being. Our de novo review of this record convinces us the juvenile court correctly terminated the parental rights of G.S.

■ G.S. also suggests Iowa Code section 232.116(3)(e) should be applied to give him another chance to be a parent. That section provides that the juvenile court need not terminate the parent-child relationship where certain extenuating circumstances exist, i.e., "[t]he absence of a parent is due to the parent's admission or commitment to any *institution*, hospital, or health facility ..." *Id.* (emphasis added). This court has recently addressed section 232.116(3)(e) in *In re J.V.*, 464 N.W.2d 887 (Iowa App.1990). There, we held "institution" did not include penal institutions. *Id.* at 890. Therefore, that statutory provision is not applicable to G.S.

Both parents also contend the evidence failed to establish the grounds for termination under section 232.116(1)(c) because there had been no prior finding of abuse or neglect. We need not address this argument as we have already concluded termination was proper under section 232.-116(1)(e) for the two older children and section 232.116(1)(g) for the youngest child.

IV. *Due Process.* Finally, G.S. contends the juvenile court erred and denied him due process by refusing to direct that he be transported from prison so he could attend the termination hearing in person. The juvenile court considered this claim and concluded G.S. would not be deprived of due process where he could take part in the proceeding by his court-appointed counsel and, pursuant to Iowa Code section 622.82 (1989), G.S.'s testimony would be taken by deposition.

It is well-established that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." [*Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982).] For that reason, "state intervention to terminate the relationship between [a parent] and [a] child must be accomplished by procedures meeting the requisites of the Due Process Clause." *Id.* ...

*In re D.J.R.*, 454 N.W.2d 838, 844 (Iowa 1990). We must determine whether the procedures followed here met the requisites of due process.

G.S. argues he, as an accused, had a right to know the charges, allegations, and evidence presented against him, as well as a right to have the State present its case first. G.S. mistakenly asserts sixth amendment rights granted to a criminal defendant in a criminal case. The termination of

parental rights is a civil case. *See Id.* at 846. In *In re D.J.R.* the supreme court held a parent does not have a constitutional right to confront a child-witness at a civil termination of parental rights hearing. *Id.* Nor does an incarcerated parent have an absolute right to be physically present at judicial proceedings involving CINA adjudications. *See* § 232.91; *In re T.M.C.* 429 N.W.2d 165, 167 (Iowa App.1988).

Due process requires "fundamental fairness" in judicial proceedings. *See Lassiter v. Department of Social Services,* 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648 (1981). Where a parent receives notice of the petition and hearing, is represented by counsel, counsel is present at the termination hearing, and the parent has an opportunity to present testimony by deposition, we cannot say the parent has been deprived of fundamental fairness. *Accord Valero v. Department of Human Resources,* 511 So.2d 200 (Ala.Civ. App.1987) (incarcerated parents were not required to be present at termination of parental rights hearing where given notice of petition and hearing, represented by counsel, and opportunity to present testimony by deposition); *Pignolet v. Department of Pensions and Security,* 489 So.2d 588 (Ala.Civ.App.1986) (due process does not require incarcerated father be allowed to attend termination hearing); *Utah v. Vargas,* 736 P.2d 1031 (Utah App.1987). We reject G.S.'s contention he was denied due process when the juvenile court overruled his motion to be transported to the termination hearing.

For all the reasons stated, we affirm the terminations of the parental rights of B.S. and G.S.

AFFIRMED.