# IN THE COURT OF APPEALS OF IOWA

No. 14-0834
Filed July 30, 2014

**IN THE INTEREST OF F.O. and H.O.,**
**Minor Children,**

**D.O., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, District Associate Judge.

A father appeals from termination of his parental rights to two children. **AFFIRMED.**

Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Bruce Kempkes, Assistant Attorneys General, John P. Sarcone, County Attorney, and Amanda Johnson, Assistant County attorney, for appellee.

Kathleen Hiatt, Des Moines, for mother.

Paul White of Juvenile Public Defender Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

A father appeals from termination of his parental rights to two children.  He argues termination was not in the children's best interest and was improper given his incarceration.  He also argues the juvenile court should have applied the statutory exceptions to find termination would be detrimental due to his bond with the children and because the children are placed with the paternal grandmother. We affirm.

## I.     BACKGROUND FACTS AND PROCEEDINGS.

The two children in this appeal are F.O., born in 2007, and H.O., born in 2008.  The family came to the attention of the Department of Human Service (DHS) in March 2013 when the mother was using drugs while caring for the children, resulting in a child abuse assessment against her.  The children were removed by temporary order March 12, 2013, and have never been returned to either parent.  The juvenile court placed the children in the temporary custody of the paternal grandmother, under DHS guardianship.

The father has never had care of the children.  He lived with the mother and children only a few months.  He has a long history of substance abuse and an extensive criminal history.  Among his other convictions, in 2004, he served one year in jail for assault.  Two years later he served eleven months on another assault conviction.  In January 2011, he began serving eighteen months in prison following convictions for being a felon in possession of a firearm and second-degree theft.  He was released in August 2012.

When this case began, the father was on parole for the firearm conviction. In May 2013, he relapsed into methamphetamine use and failed to appear for a drug test. This constituted a violation of his probation, and a warrant issued for his arrest. On May 15, 2013, before he could be arrested on the warrant, he was arrested and subsequently convicted of possession of a schedule II controlled substance with intent to deliver—a class "B" felony—and sentenced to twenty-five years incarceration. He was in prison at the time of the termination hearing. He testified he anticipated he would be eligible for parole November 22, 2015. He would then be a parolee until 2026.

The father admitted at the time he was arrested on the drug charge he was using methamphetamine regularly and testified he had used it extensively in the past as well. He testified he had completed a substance abuse evaluation and the recommendation was for treatment, but he did not complete any and was not receiving treatment at the time of the termination hearing.

Prior to his latest arrest in May 2013, the father maintained visitation with the children. At the time of the termination hearing, he testified he spoke with the children by phone regularly and visited once a month when the paternal grandmother took the children to the prison where he is incarcerated. The children have been in the temporary legal custody of their paternal grandmother since their removal March 2013. The DHS worker reported the grandmother's home is safe, consistent, and loving. The grandmother is willing to adopt the children. The children are happy and healthy in their placement. The DHS worker testified the children required stability. The DHS worker also reported it

would be "extremely detrimental" to the children to be removed from the grandmother's home.

The State filed a petition to terminate parental rights in January 2014. The case came on for hearing in April 2014. The mother consented to termination of her parental rights and does not appeal. The court terminated the father's parental rights under Iowa Code section 232.116(1)(d) and (f) (2013). The father appeals.

## II.    STANDARD OF REVIEW.

We review a juvenile court order terminating parental rights de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *Id.* Our primary consideration is the best interest of the child. *Id.* at 776.

## III.    ANALYSIS.

The father does not challenge any of the statutory grounds for termination.[1]    Instead he argues, under Iowa Code section 232.116(2), terminating his parental rights was not in the children's best interest. He further argues the juvenile court should have applied the statutory exceptions, under Iowa Code section 232.116(3) to prevent termination.

---

[1] In determining whether to terminate parental rights, the court follows a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, the court must determine if a statutory ground for termination exists under section 232.116(1). *Id.* Second, the court must give consideration to the child's best interests. *See* Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40. Finally, the court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply. *P.L.*, 778 N.W.2d at 39.

### A.     Best Interest.

Under Iowa Code section 232.116(2), in considering whether to terminate parental rights, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  The children have been out of the mother's care since March 2013, well over a year. The father has never cared for the children.  At the time of the hearing, he was incarcerated.  Although eligible for parole in November 2015, this is no guarantee he would be granted parole.  "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing."  *A.B.,* 815 N.W.2d at 778 (internal quotations and citations omitted).  The father has received no treatment for his substance abuse issues.  On his last parole he abused drugs, violated the terms of his probation, and was arrested on a new, more serious charge.  The children have been in the custody of the paternal grandmother since their removal.  The grandmother has been providing a safe, stable, and loving home.  The children's safety, long-term nurturing and growth, as well as their physical, mental, and emotional needs are best served by terminating the father's parental rights.

### B.     Statutory Exceptions.

The juvenile court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply.  *P.L.,* 778 N.W.2d 33, 39 (Iowa 2010).  The factors weighing against termination are permissive, not

mandatory. *In re A.M.*, 843 N.W.2d 100, 113 (2014). "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

Iowa Code section 232.116(3)(c) provides the juvenile court need not terminate the parental relationship if it finds by clear and convincing evidence that the termination would be detrimental to the child due to the closeness of the parent-child relationship. The father testified he has a bond with the children. He has never cared for them himself. Since their birth, he has spent several years in incarceration. We find no evidence in the record that termination would be a detriment to the children due to the asserted bond.

Iowa Code section 232.116(3)(e) provides the juvenile court need not terminate the parental relationship if "[t]he absence of [the] parent is due to the parent's admission or commitment to any institution, hospital, or health facility[.]" The father contends the court should have applied this section to prevent termination because he has been incarcerated in prison. The word "institution" in section 232.116(3)(e) does not include penal institutions. *In re J.V.*, 464 N.W.2d 887, 890 (Iowa Ct. App. 1990) (overruled on other grounds by *P.L.*, 778 N.W.2d at 39-40); *In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991). Thus, this section does not apply.

Iowa Code section 232.116(3)(a) provides the juvenile court need not terminate the parental relationship if it finds a relative has legal custody of the child. The father's argument is that the juvenile court should have applied this

exception because the children are in the legal custody of the paternal grandmother. The father being released on parole and assuming care of these children is at best a speculative future event. "The crucial days of childhood cannot be suspended" while the father serves his prison term and the children "should not be made to suffer indefinitely in parentless limbo." *In re K.C.*, 660 N.W.2d 29, 35 (Iowa 2003). The paternal grandmother is now providing the stability and certainty they need. It is clear the long-term best interests of the children require termination of the father's parental rights. Thus we find no statutory exception applies to prevent termination.

**IV. CONCLUSION.**

Upon our de novo review, we conclude it is in the children's best interest to terminate the father's parental rights and no statutory exception applies to avoid termination. Accordingly, we affirm the juvenile court.

**AFFIRMED.**