**IN THE COURT OF APPEALS OF IOWA**

No. 14-1417
Filed December 24, 2014

**IN THE INTEREST OF K.R.,**
**Minor Child,**

**L.R., Mother,**
**Appellant,**

**M.T., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Woodbury County, Julie A. Schumacher, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Theresa Rachel of Deck Law L.L.P., Sioux City, for appellant mother.

Zachary S. Hindman of Bikakis, Mayne, Arneson, Hindman & Hisey, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Patrick Jennings, County Attorney, and J. Aaron Kirsch, Assistant County Attorney, for appellee State.

Marchelle M. Denker, Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DOYLE, J.**

A father and mother separately appeal from the termination of their parental rights to their child, K.R., born in February 2012.  Because statutory grounds exist to terminate the parental rights of the mother and the father, and because termination is in the best interest of the child, we affirm on both appeals.

## I.    *Background Facts and Proceedings*

This family came to the attention of the Iowa Department of Human Services (DHS) in June 2013, following reports that the mother was leaving the child in the care of the child's great grandmother who was physically unable to care for the child.  An ensuing DHS investigation revealed the mother often left the child in the care of others without indicating when she would return and without responding to calls and text messages concerning the child.  The father was incarcerated on a burglary charge and had been incarcerated since prior to the child's birth.  His discharge date is August 2018, but he may be paroled in January 2015.

DHS implemented a safety plan regarding the care of the child.  Several days later, the mother again left the child in the care of the great grandmother.  The great grandmother was unable to care for the child and requested DHS place the child elsewhere.  Efforts to contact the mother were unsuccessful, and the mother's whereabouts were unknown.  An ex parte removal order was entered on June 26, 2013, removing the child from the mother's care.  The child was adjudicated to be in need of assistance.

DHS initiated reunification services.  DHS completed a child abuse assessment in July 2013, which resulted in a report that was founded against the

mother for denial of critical care and failure to provide adequate supervision. The mother admitted leaving the child unattended in her crib for "a length of time" knowing the child was without proper care.

Due to a medical condition, the child cannot be exposed to smoke; the mother was cautioned as such, but she continued to smoke around the child and reside with her mother and grandmother who also smoke in the home.[1] Although visitations initially took place at the mother's home, the visits were moved to the Boys Town office due to cigarette smoke in the home.

Although the mother exhibited positive parenting skills during supervised visitation with the child, she did not always attend visits and concerns were raised about her commitment to being a full-time parent. Concerns were also raised about the mother's possible undiagnosed mental health issues, her immaturity, and her inability to provide a safe and stable home for the child. The mother did not follow through on DHS efforts to help her find a smoke-free place to live. While the mother was allowed some time alone with the child, visitations did not progress to fully unsupervised contact, and the mother declined additional visitations offered to her at the home of the child's foster family.

The child's guardian ad litem filed a petition to terminate parental rights in April 2014. The termination hearing was held in June 2014. The juvenile court observed neither the mother nor the father had taken the necessary steps to make the child a priority in their lives, stating, "Neither has assumed any of the responsibilities or duties inherent in being a parent, prior to or since [the child's]

---

[1] At the time of the termination hearing, the mother had not quit smoking, although she testified she smoked much less.

removal." The child continued to be placed with the same family as she had since her removal, which was a pre-adoptive placement.

The DHS caseworker recommended termination of parental rights. According to the caseworker, although the mother had recently obtained employment at Tyson's and the mother was bonded to the child, she was unable to resume caring for the child at that time or in the immediate future without risk to the child's safety and well-being. The mother acknowledged she did not follow through with the DHS safety plan and the child should not have to wait for her to start making good choices. The father had written several letters to the child and the foster family, but otherwise had had minimal involvement with the child.

The juvenile court entered an order terminating the mother and father's parental rights pursuant to Iowa Code sections 232.116(1)(b), (d), (e), and (h) (2013). The mother and father appeal. We conduct a de novo review of termination-of-parental-rights proceedings. *In re P.L.*, 778 N.W.2d 37, 40 (Iowa 2010).

## II. *Mother's Appeal*

The mother challenges the termination of her parental rights as to all sections relied on by the juvenile court.[2] We may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). Section 232.116(1)(h) provides that termination may be ordered when there is clear and convincing evidence that a child under the age of three who has been adjudicated a CINA

---

[2] The mother further claims the juvenile court evaluated the evidence unfairly in reaching its conclusion. We do not believe the court improperly evaluated the evidence. In any event, our de novo review dispels the mother's claim in this regard.

and removed from the parents' care for at least the last six consecutive months cannot be returned to the parents' custody at the time of the termination hearing. There is clear and convincing evidence to support termination of the mother's parental rights to K.R. pursuant to this section.

Giving primary consideration to the "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," we conclude termination of the mother's parental rights will best provide the child with the permanency she deserves. *See* Iowa Code § 232.116(2).

### III. Father's Appeal

The father also challenges the termination of his parental rights as to all sections relied on by the juvenile court. There is clear and convincing evidence to support termination of the father's parental rights to K.R. pursuant to section 232.116(1)(h). *See, e.g.*, *In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991) (holding a parent's incarceration makes it impossible to return a child to his or her care at the present time). We conclude termination of the father's parental rights will best provide the child with the permanency she deserves. *See* Iowa Code § 232.116(2).

We decline to address the father's challenge to the termination of the mother's parental rights or the father's request that we not terminate his parental rights because the child could be placed with the mother. The father cannot assert facts or legal positions pertaining to the mother; the juvenile court makes a separate adjudication as to each parent. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) ("The father's only basis for the motion dealt with the

change in the *mother's* living situation and how that should have prevented the termination of her parental rights. He did not have standing to assert that argument on her behalf in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights."); *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (same).

## IV.  *Conclusion*

Because statutory grounds exist to terminate the parental rights of the mother and the father, and because termination is in the best interest of the child, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**