**IN THE COURT OF APPEALS OF IOWA**
No. 15-1564
Filed November 12, 2015

**IN THE INTEREST OF S.S. and I.S.,**
    Minor Children,

**S.S., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Scott County, Cheryl E. Traum, District Associate Judge.

A father appeals the termination of his parental rights to one-year-old twins. **AFFIRMED.**

Steven Stickle of Stickle Law Firm, P.L.C., Davenport, for appellant.

Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd and Kathryn K. Lang, Assistant Attorneys General, for appellee.

Carrie Coyle, Davenport, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

A father appeals the termination of his parental rights to his one-year-old twin sons. He does not challenge the grounds for termination. Instead he claims termination was not in his sons' best interest. He also argues the juvenile court should have declined to terminate based on his incarceration. In our de novo review,[1] we find the twins' safety and their long-term nurturing and growth are best served by terminating the father's parental rights, and no countervailing ground exists to delay their move toward permanency. As a result, we affirm.

The Iowa Department of Human Services (DHS) focused its attention on this family before the twins were born. In September 2013, the father threw a brick at their mother, but missed. The brick hit the twin's half-brother[2] in the head; that two-year-old child suffered a four-inch laceration requiring stitches. The father was charged with child endangerment and domestic abuse assault. The parents committed additional acts of domestic violence while the mother was pregnant with the twins, and both parents violated protective orders.

Concerned about their safety at home, the DHS removed the twins from the custody of their parents three days after their birth in July 2014. The juvenile court adjudicated them as children in need of assistance (CINA) on August 28, 2014. Early in the CINA case, the parents attended two-hour supervised visits together three times a week. But those joint visits stopped in early September

---

[1] We review termination proceedings de novo. *In re A.M.*, 843 N .W.2d 100, 110 (Iowa 2014). We are not bound by the juvenile court's findings of fact, but we give them weight, especially in assessing the credibility of witnesses. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).
[2] This child had a different biological father.

2014 when the mother tried to end her relationship with the father; he came to her home, forced his way in, pushed her down on a bed, and tried to smother her with a pillow. The mother also said the father had a gun with him. The mother reported another armed assault by the father in December 2014.

According to the DHS worker, the father's attendance at visitation was "very, very sporadic" during 2014. In addition, he continued to engage in criminal behavior, picking up charges of felony credit card fraud and fourth-degree theft, which led to probation revocation proceedings and time in jail.

The State filed a petition to terminate the parental rights of both the father and the mother on May 13, 2015. At the August 17, 2015 hearing, the father did not challenge the grounds for termination—acknowledging he faced an indeterminate five-year prison sentence. But he did request more time to work toward reunification and asserted termination was not in the best interest of his sons. The mother did not resist the termination; she expressed gratitude for the foster parents, acknowledging the twins were "being very well taken care of" in their home. The guardian ad litem (GAL) supported termination and highlighted the twins' "wonderful placement" with their foster family. On September 2, 2015, the court issued its order terminating the rights of both parents.[3] The court based its termination of the father's rights on Iowa Code sections 232.116(1)(b), (d), (e), (h), (i), (j), (m) (2013).

In his petition on appeal, the father objects to the juvenile court's ruling on two bases: (1) he claims termination was not in the children's best interest and

---

[3] The mother is not a party to this appeal.

(2) he argues termination is not necessary under Iowa Code section 232.116(3)(e).[4]

On the question of best interest, the father does not cite Iowa Code section 232.116(2). Rather he relies on the due process clauses of the federal and state constitutions[5] and *Lassiter v. Dep't of Soc. Servs.,* 452 U.S. 18, 27 (1981) for the proposition that a father's right to raise his child is an important interest warranting deference and, absent a powerful countervailing interest, requires protection. We acknowledge the father's due process interest in raising his children, but we likewise recognize the equally important interest of the State "in providing a stable, loving homelife" for children as soon as possible. *See In re P.L.*, 778 N.W.2d 33, 38 (Iowa 2010). In determining the children's best interests, we give primary consideration to their safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional conditions and needs. *See* Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 40-41.

We do not believe these children could be safely placed with their father, even after his release from prison. The record reveals the father has not formed a meaningful bond with his sons. Even before he faced incarceration, the father invested little effort in the supervised visits arranged by DHS and did not

---

[4] The father's petition on appeal cites section 232.116(3)(d) but quotes language from section 232.116(3)(e).

[5] U.S. Const. amends. V, XIV; Iowa Const. art. I, sec. 9.

participate in parenting education.[6]  The father has a history of committing domestic abuse and child endangerment.  At the termination hearing, his own mother acknowledged his "violent tendencies."

On the other side of the fulcrum, the record shows reason for optimism about the twin's current placement.  They have lived with the same foster family for about one year.  They are doing very well there and the foster parents are willing to adopt them.  The GAL found they were well integrated into the foster home.  As their biological mother realized, it is in the twins' best interest for the court to terminate parental rights and allow the move toward permanency.  *See In re A.M.*, 843 N.W.2d at 113 (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements" of best interest are the children's safety and "need for a permanent home")).

The father also argues termination is not necessary under Iowa Code section 232.116(3)(e).[7]  This provision allows the court not to terminate if "[t]he absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces."  This section does not apply to correctional institutions.  *In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991); *In re J.V.*, 464 N.W.2d 887, 890 (Iowa Ct. App. 1990) *overruled on other grounds by P.L.*, 778 N.W.2d at 33. Accordingly, we reject the father's argument.

**AFFIRMED.**

---

[6] The father did complete a batterer's education program and a healthy relationships course while in jail.

[7] The father's petition on appeal cites section 232.116(3)(d) but quotes language from section 232.116(3)(e).