# IN THE COURT OF APPEALS OF IOWA

No. 17-0147
Filed May 3, 2017

**IN THE INTEREST OF S.M.,**
**Minor child,**

**S.B., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Deborah F. Minot, District Associate Judge.

        The mother appeals from an order terminating her parental rights pursuant to Iowa Code chapter 232 (2016).  **AFFIRMED.**

        Andrew R. Wiezorek of Jacobson, Johnson, and Wiezorek, P.L.C., Cedar Rapids, for appellant mother.

        Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

        Anthony Haughton of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor child.

        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Sarrina, the mother of S.M., appeals from the district court's order terminating her parental rights pursuant to Iowa Code section 232.116(1)(h) (2016). Our review is de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework and burden of proof are both well established and need not be repeated herein. *See id.*; *In re M.S.*, 889 N.W.2d 675, 679 (Iowa Ct. App. 2016).

I.

S.M. tested positive for THC at his birth in January 2016. The Iowa Department of Human Services (IDHS) became involved with the family.[1] IDHS asked the mother to go to substance-abuse treatment, obtain an evaluation of her mental health, and get a drug evaluation. She complied with all those requests.

On March 8, 2016, IDHS received a report Sarrina had left S.M. alone with a sex offender, her then-paramour Pierre, in an apartment. Sarrina does not deny doing so but argues she only left the child alone while she ran across the hall to the landlord's office to pay her rent and get a receipt and was not gone for more than a few seconds. Sarrina believed Pierre was at work at the time. During the time she was gone, law enforcement responsible for checking on sex offenders came to the apartment complex. She had retrieved S.M. by the time the police officers confronted her but they had observed she did not have the child with her when she entered the apartment. An IDHS employee met with

---

[1] The father was granted a six-month extension to work toward reunification, so he remains involved with IDHS but is not a party to this appeal.

Sarrina to discuss implementing a safety plan. Then, and at trial, Sarrina defended Pierre, arguing offenders are frequently placed on the sex offender registry for frivolous offenses. The employee informed Sarrina removal was an option if a safety plan was not put in place. By the time the employee had gotten back to her office, Sarrina had called the employee to apologize and agree to cooperate with services, but the employee did not believe Sarrina was sincere.

The next day, March 9, IDHS came to remove the child from Sarrina's care. Sarrina refused to release the child. IDHS engaged the services of law enforcement to remove the child from Sarrina's arms. According to the petition for termination of Sarrina's parental rights, Sarrina attempted to bite a police officer. As a result, she was charged with felony child endangerment, interference with official acts, and assault on a person in certain occupations. S.M. was removed from her care and placed in a foster home.

Sarrina remained involved in the case. At a family team meeting on July 8, she was employed, was participating in therapy, had completed a mental-health evaluation, had completed a substance-abuse evaluation and was attending treatment, was attending doctor appointments with S.M., and visiting with the child. Her visits were moved to semi-supervised.

Shortly thereafter, IDHS learned a release was no longer in place with Sarrina's substance abuse treatment center—that is, IDHS no longer had access to any information from the center. IDHS advised Sarrina to reinstate a release or visits would return to fully supervised. When no release was signed, visits were moved to fully supervised on July 21. Sarrina would later admit to IDHS she continued to use marijuana during the pendency of this action.

On July 27, Sarrina allegedly threatened to kill workers involved in the case. Her visits were suspended and she was charged criminally. She moved to Illinois to live with her mother or sister. An arrest warrant issued on August 16. Sarrina turned herself in to law enforcement on October 13 and remained in jail throughout the rest of this action. Sarrina requested to be present during the termination hearing but that request was denied. The district court cited her behaviors and threats. The district court also expressed concern with Sarrina's medical conditions—she was eight or nine months pregnant with Pierre's child at the time of the termination hearing and had experienced some complications with the pregnancy. The district court did allow Sarrina to be transported to the courthouse to testify at the termination hearing, but the district court did not allow her to remain in the courtroom for the remainder of the hearing.

II.

Sarrina claims the district court abused its discretion in not allowing her to remain in the courtroom for the entirety of the hearing. "An abuse of discretion is found when the trial court has clearly exercised its discretion on untenable grounds or acted unreasonably." *In re Q.A.S.*, No. 13-1182, 2013 WL 5229746, at *4 (Iowa Ct. App. Sept. 18, 2013).

We first address whether the constitution demanded Sarrina be allowed to be present for the entirety of the termination hearing. "Due process requires 'fundamental fairness' in judicial proceedings." *In re J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991) (citation omitted). "Where a parent receives notice of the petition and hearing, is represented by counsel, counsel is present at the termination hearing, and the parent has an opportunity to present testimony by

deposition, we cannot say the parent has been deprived of fundamental fairness." *Id.* Sarrina had notice, was represented by counsel, counsel was present, and Sarrina had an opportunity to present her testimony in person. Sarrina's due process rights were not violated.

Sarrina contends she had a statutory right to be present for the entirety of the termination hearing. She relies on Iowa Code sections 232.38 and 232.91. We conclude the sections are inapplicable here. Each code provision relates only to "hearings or proceedings under this division," meaning one of the divisions of Chapter 232. *See id.* Section 232.38 falls under Division II—Juvenile Delinquency Proceedings—and section 232.91 falls under Division III—Child in Need of Assistance Proceedings. Termination proceedings are contained in Division IV. Therefore, the cited provisions are inapplicable.

Finally, we address the district court's inherent authority to exclude parties from a hearing. "It is generally recognized that matters relating to the course and conduct of a trial, not regulated by statute or rule, are within the discretion of the trial judge." *In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998). The power to regulate proceedings derives from the court's inherent authority to do whatever is reasonably necessary to discharge the responsibilities of the court. *See State v. Hoegh*, 632 N.W.2d 885, 888 (Iowa 2001). In this case, the district court concluded Sarrina could be present for her testimony but that she should be removed from the courtroom for the remainder of the hearing. The district court concluded removal was necessary because of Sarrina's past violent outbursts and threats to kill people involved in the case, including IDHS employees who were scheduled to testify at trial. Under the circumstances, we

cannot conclude the district court abused its discretion in excluding Sarrina from the remainder of the termination hearing.

III.

Sarrina argues the State failed to prove its ground for termination under section 232.116(1)(h). She makes no further argument and cites no authority. She has therefore waived this argument. *See* Iowa R. App. P. 6.903(2)(g)(3). Because our review is de novo, however, we undertake an independent review of the evidence to satisfy ourselves this ground has been proved. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010); *In re T.S.-G.*, No. 16-1821, 2017 WL 513956, at *2 (Iowa Ct. App. Feb. 8, 2017) ("We therefore cannot rubber stamp what has come before; it is our task to ensure the State has come forth with the quantum and quality of evidence necessary to prove each of the elements of its case."). We will uphold an order terminating parental rights when clear and convincing evidence of the statutory ground for termination exists. *See D.W.*, 791 N.W.2d at 706.

The State was required to prove (1) the child is three years of age or younger; (2) the child has been adjudicated in need of assistance; (3) the child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) there is clear and convincing evidence that the child cannot be returned to the custody of his parents as provided in section 232.102 at the present time. *See* Iowa Code § 232.116(1)(h).

We conclude there is clear and convincing evidence supporting each of the elements of the State's case. The child was approximately ten months old at the time of the hearing. The child was adjudicated in need of assistance in April 2016. The child was last removed from the mother's custody in March 2016, approximately eight months prior to the termination hearing. At the time of the hearing, the mother was in jail and the child could not be returned to her care. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (interpreting "at the present time" to mean "at the time of the hearing"); *In re K.B.*, No. 14-0373, 2014 WL 1714964, at *2 (Iowa Ct. App. Apr. 30, 2014) ("The father is incarcerated; K.B. cannot be returned to his care.").

IV.

Sarrina argues termination is not in the child's best interest. *See* Iowa Code § 232.116(2). She notes reports in the record indicating she is "fully capable of parenting S.M. in a loving and nurturing way." She also finds support in the report of the guardian ad litem (GAL). The GAL's conclusions indicate the difficulties of this case:

> The assessment of the GAL is this: [Sarrina] is an extremely immature, emotionally, psychologically stunted young woman. She first came under DHS radar due to her child being born with THC in his system, generating a voluntary case. In spite of this situation there was no testimony during the trial that indicated to the GAL that Sarrina placed her child in a situation that would lead the GAL to believe she cannot care for her child if given the opportunity or demonstrated a fundamental inability to do so. The GAL is not of course referring to the fact that at present [Sarrina] is incarcerated and physically unable to care for the child. The [termination] petition cites criminal records of both parents but Sarrina's record is new, having arisen out of this case, while [the father's] is long, extensive and extremely violent. Given the opportunity provided to the child's father, with whom the GAL has many concerns at present, [Sarrina's] parental rights should not be terminated at this

time. . . . [C]onsideration of [Sarrina's] own background in the foster care system and an absence of evidence of bad parenting or inability to parent, are key to this recommendation.

. . . .

The GAL does not believe that it is in the long-term best interests of the child to have the parental rights of his mother terminated. While the issue of removal of the child cannot be re-litigated, the GAL believes that, but for [Sarrina's] irrational reaction to the removal of [S.M.], this case would now be on a completely different footing.

Not all providers in this case were as forgiving as the GAL. Significant portions of testimony focused on frivolous details. IDHS was irritated because Sarrina was not apparently receptive to information about allowing the child to sleep with a potentially suffocating blanket, but when asked if she adopted the information, an IDHS case worker testified, "And then it was hard to know, because I would knock on the door and she could have taken the blankets and the pillows out of the Pack 'n Play." In other words, how is one to tell if blankets have been removed, when blankets have been removed? At another time, an IDHS worker was upset because Sarrina served her child juice. Another inciting incident was when Sarrina allowed the child to suck—not eat—a chicken nugget. Were these the only concerns, this case would be meritless.

However, these are not the only concerns. The case began because Sarrina used marijuana while pregnant with S.M. She has apparently continued to use marijuana while pregnant with her second child because she reported needing to be hospitalized after smoking marijuana. She engaged in a romantic relationship with a sex offender and then defended him as though he had done nothing wrong. Whether she meant to leave the child with him in March or not, her words suggest she would have no problem doing so in the future. She

threatened to kill IDHS workers on at least two occasions, leading to her present incarceration. She refused to provide substance abuse treatment information to IDHS. She has taken no responsibility for her "irrational" actions. She has made no progress; she has only regressed. Given the nature of these concerns and the lack of progress, we must conclude termination is in the child's best interest.

V.

Sarrina argues a permissive exception to termination is applicable here because she shares a close bond with the child. *See* Iowa Code § 232.116(3)(c). We do not think this exception serves to prevent termination. The child was removed from Sarrina's care at two months of age. Since then, she has had only semi-supervised or fully supervised visitation with the child, and has not seen the child at all since he was approximately seven months of age. These facts do not establish a bond sufficiently close to preclude termination.

VI.

Sarrina also requests an additional six months to work toward reunification. We can grant this request if we determine the need for removal will no longer exist at the end of the extension. *See* Iowa Code § 232.104(2)(b). The child was removed because of concerns over substance abuse and because the child was left with a sex offender. Sarrina has shown no willingness to abate her substance abuse. Although her present relationship with Pierre is unclear from the record, she did continue to defend him at the termination hearing and seemed to see no issue with leaving her child unattended with him. Based on these facts, we cannot say the conditions leading to removal will no longer exist

in another six months.  *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

## VII.

For the foregoing reasons, the decision of the district court is affirmed.

**AFFIRMED.**