**IN THE COURT OF APPEALS OF IOWA**

No. 21-0222
Filed August 18, 2021

**IN THE INTEREST OF G.S. and H.R.,**
**Minor Children,**

**N.S., Mother,**
        Appellant,

**A.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.

        A mother and father separately appeal the termination of their parental

rights to their children.  **AFFIRMED ON BOTH APPEALS.**

        Barbara O. Hoffman, Des Moines, for appellant mother.

        Lori M. Holm, Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Charles Fuson of Youth Law Center, Des Moines, attorney for minor

children.

        Jami Hagemeier of Drake Legal Clinic, Des Moines; and Nate Jackson and

Clark Butler, Law Students, guardians ad litem for minor children.

        Considered by Tabor, P.J., Greer, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**VOGEL, Senior Judge.**

The mother of G.S., born in 2008, and H.R., born in 2006, and the father of G.S. separately appeal the termination of their parental rights to the children.[1] Because we agree with the juvenile court that neither parent can safely parent the children, we affirm.

The parties originally came to the attention of the Iowa Department of Human Services (DHS) in 2006 when H.R. was just an infant. The father in this case had been convicted of two counts of sexual abuse in 1999, had been incarcerated, and was a registered sex offender. Upon the father's release from prison, the mother and H.R. began living with him. A child abuse assessment was founded against the mother for denial of critical care, noting the mother was not able to recognize the safety risk the father posed to her infant daughter. The record shows more investigations ensued as the mother and father racked up various criminal convictions and DHS's concerns for the safety of H.R. and G.S. mounted. In May 2019, the mother's and father's drug screens were positive for methamphetamine. The children were removed and have not returned to the care of either parent. When years of offered services failed to yield positive improvement in either parent's ability to safely care for the children, the State sought to terminate their parental rights. The termination hearing was held over the course of several dates in October, November, and December 2020, after which the juvenile court terminated the mother's rights under Iowa Code section

---

[1] The parental rights of any unknown and putative father of H.R. were also terminated.

232.116(1)(f) (2020) and the father's rights under section 232.116(1)(f) and (*l*). The parents separately appeal.

**Scope of Review.**

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.* "'[O]ur fundamental concern' on review 'is the child's best interests.'" *Id.* (alteration in original) (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014)).

**Iowa Code § 232.116(1)(f).**

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We turn to section 232.116(1)(f) for both parents, which provides the juvenile court may terminate a parent's rights when the court finds that all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance [(CINA)] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

**The Mother's Appeal.**

The mother claims the State did not prove by clear and convincing evidence the grounds under 232.116(1)(f).  Just before the May 2019 removal hearing, the mother tested positive for methamphetamine and there was a warrant out for her arrest because she was on probation for a prior forgery offense.  The mother managed to evade law enforcement until August 22, when she was arrested.  She remained in custody throughout these proceedings.  Her argument wraps around the assertion that she was not afforded due process because her request for a continuance was not granted.  She claims this in part because the COVID-19 pandemic led to restrictions as to visits and lockdowns and to delays in parole board meetings.

We note the juvenile court's decision makes no mention of the mother's due process argument.  "Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal."  *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003).  However, before the November 12 segment of the termination hearing began, the mother's attorney requested a continuance because a "covid lockdown" at the prison prevented the mother from meaningful participation in the virtual hearing.  Therefore, we choose to address her claim.  After listening to the arguments of the parties, the court decided there was no good cause for another continuance of the hearing but that a transcript would be prepared for the mother and her counsel to review.  The court would then afford the mother an additional hearing to assert her arguments.  This ruling complied with our supreme court's alternative procedure as set out in *In re M.D.* for when a parent is not able to participate in a hearing telephonically.  *See*

921 N.W.2d 229, 236 (Iowa 2018) (requiring the juvenile court to allow the unavailable incarcerated parent "to review a transcript of the evidence offered at the hearing"). Her due process rights were not violated.

During the third day of the termination hearing, December 17, 2020, the mother remained incarcerated but testified that she was hopeful to be eligible for work release in the near future. The fact that she was still not able to resume care of the children by the end of the termination hearing resolves the question as to whether "[t]here is clear and convincing evidence that *at the present time* the child[ren] cannot be returned to the custody of the child[ren]'s parents as provided in section 232.102." Iowa Code § 232.116(1)(f)(4) (emphasis added); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

But we choose to further address the merits of her argument as well as her claim the juvenile court should have granted her a six-month continuance under Iowa Code section 232.104(2)(b). The mother claimed to have been addressing her substance-abuse and mental-health issues while incarcerated by completing every rehabilitation offered through the prison facility. She asserted this would allow her to resume care of her children.

However, her assertions ring hollow when, on April 28, 2020, she tested positive for opiates while still denying any substance abuse. As of the final day of the termination hearing, December 17, there was no set date for the mother's release from incarceration. Yet, after more than nineteen months since the children were removed, the mother wanted the children to continue to wait, "to give [her] an opportunity." We do not hold the children in limbo awaiting the release of

an incarcerated parent. *See In re J.S.,* 470 N.W.2d 48, 51 (Iowa Ct. App. 1991) (stating incarceration is no justification for a parent's failed responsibilities). The juvenile court found, and we agree, the mother "has not demonstrated a commitment to sobriety and recovery from drug use while in prison. There is no reasonable certainty she will maintain sobriety in the community." We further agree that "[t]here are no facts the court can rely upon to support a conclusion that with more time [the mother's] capacity to safely parent [her] children will increase."

**The Father's Appeal.**

The father challenges the support for the fourth element of section 232.116(1)(f), asserting he could have had G.S. returned to his care at the time of the termination hearing with the continuation of offered services. The juvenile court disagreed, concluding the father had "not demonstrated a commitment to sobriety or recovery" and "can't keep track of the truth."

The record traces much of the father's difficulties, beginning at the adjudicatory hearing when the father was in custody after stipulating to a probation violation. He remained incarcerated until September 2019. At the April 8, 2020 permanency hearing, the father was granted an additional six months to work toward reunification under Iowa Code section 232.104(2)(b). The expected behavioral changes charged to the father included that he abstain from illegal substances, engage in mental-health treatment, and comply with the terms of his probation. The father fell far short of those requirements. On August 22, he was charged with third-degree and fifth-degree theft and fraudulent use of credit cards. He was arrested for probation violations the same day. On September 29, he was cited for driving while license denied or revoked. He was then ordered to submit

to drug testing. A drug sweat patch was applied, but he claimed it fell off when showering. He further acknowledged taking painkillers due to his claims of pain, and he subsequently tested positive for an opiate. The father was arrested again on October 13 and ordered to submit to a drug screen. However, he was not able to produce a urine sample for the screen. On December 7, a drug screen test was positive for marijuana metabolite, fentanyl, and methadone.

Although the father completed a substance-abuse treatment program while incarcerated, the record reveals he fell back into using drugs, resulting in positive drug tests while he continued to deny any illegal substance use. We agree with the juvenile court that the evidence supported that G.S. could not be safely returned to the father's care.

**Consideration of the Best Interests of the Child and Any Impediments to Termination Under Iowa Code section 232.116(2) and (3).**

We address these issues together because of the interwoven facts supporting each section. The father asserts the best interests of G.S. are not served by the termination of his parental rights. The "best interests" is set forth in Iowa Code section 232.116(2), which provides, "[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

Additionally, both the mother and father assert termination should be precluded because the children, through their attorney, object to termination[2] and because of their claimed strong bond with the children. Section 232.116(3)(b) allows the court to decline to terminate if a "child is over ten years of age and objects to the termination." Section 232.116(3)(c) allows the court to decline to terminate if termination "would be detrimental to the child at the time due to the closeness of the parent-child relationship."

The juvenile court spent a good deal of time in going through the parents' separate arguments, finding neither parent could offer the children a safe home where they would be nurtured and their needs would be met. The record was replete with the roller-coaster ride the children have been on with their parents, both before and after removal. The juvenile court was also sensitive to the permissive factor of the children's objection to termination. It carefully balanced the children's objections "against their age, maturity, the misinformation they have sometimes received from [the mother and the father], and also the instinct they feel to protect [the mother and the father]." In doing so, the court looked to the harm both parents subjected the children to and the resulting confusion in promises made and promises broken. The children's therapist diagnosed them with "adjustment disorder with mixed disturbance of emotions and conduct," opining "that a continued lack of permanency is largely contributing to these behaviors. . . . Once they are able to fully receive a consistent environment and

---

[2] While that was the position asserted by the children's attorney at trial, there is no appeal filed on behalf of the children. Only the guardians ad litem filed a brief, agreeing with the juvenile court's ruling.

clear expectations, they will have the chance to succeed." On balance, the court ultimately found termination would be "less harmful than maintaining the parent-child relationship." With no perfect answer to the combination of love offered and turmoil inflicted, we agree the impediments to termination are out-weighed by the children's best interests.

**AFFIRMED ON BOTH APPEALS.**