# IN THE COURT OF APPEALS OF IOWA

No. 21-1679
Filed February 16, 2022

**IN THE INTEREST OF J.S., M.S. and A.S.,**
**Minor Children,**

**J.S., Father,**
 Appellant,

**S.G., Mother,**
 Appellant.

_____

Appeal from the Iowa District Court for Clay County, Andrew J. Smith, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights to three children. **AFFIRMED ON BOTH APPEALS.**

Debra S. De Jong of De Jong Law Firm, P.C., Orange City, (until withdrawal) and Jessica R. Noll of Deck Law PLC, Sioux City, for appellant father.

Bethany Brands of Boji Legal Services, Spirit Lake, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee, State.

Lisa K. Mazurek of Miller, Miller, Miller, P.C., Cherokee, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

A mother and a father separately appeal the termination of their parental rights to three children. Each challenges the sufficiency of the evidence supporting the grounds for termination and whether the State made reasonable efforts to return the children home. In the alternative, they ask for more time. Finally, they challenge the juvenile court's determination that termination is in the children's best interests. Having reviewed these claims and concluded they lack merit, we affirm.

### *I. Background Facts and Proceedings.*

This appeal involves three children under the age of four who came to the attention of the Iowa Department of Human Services (DHS) in late 2019 due to domestic violence in the home. The DHS offered the family voluntary services, but the services that were provided made little difference. The father was arrested on charges of domestic abuse assault against the mother in May 2020.[1] Because this incident occurred while the children were in the home and the father tested positive for methamphetamine, allegations of denial of critical care for failure to provide proper supervision and dangerous substances were founded against the father.

The State petitioned to adjudicate the children as children in need of assistance (CINA) in June 2020. The juvenile court entered an adjudicatory order in September of 2020 after the parents stipulated the children were CINA. In the months that followed, the parents did little of what was expected of them and domestic violence continued in the home. As a result, the juvenile court removed the children from the parents' care in December 2020. The children were tested

---

[1] The father pled guilty to the charge and two counts of violating a protective order.

for drugs just after the removal, and all three children tested positive for methamphetamine. Allegations of presence of illegal drugs and dangerous substances were founded against both the mother and the father.

The violence between the mother and the father continued after the children's removal. A supervised visit with the children on January 27 was cancelled when the children arrived and it was obvious that an incident had just occurred; the father had fresh scratches on his face, and the mother's right hand was broken. Another incident occurred about two weeks later, which led to the father's arrest on a charge of domestic abuse assault, second offense. The next day, the district court revoked the father's probation on a felony drug charge. The father has remained incarcerated with a tentative discharge date of August 25, 2025.[2]

Throughout the CINA proceedings, the mother denied using methamphetamine and blamed the children's exposure to methamphetamine on the father, though she claims she was unaware he was using in the home. But in February 2021, the father stated the mother had been using methamphetamine with him. The mother denied the accusation but refused drug testing until April, when she tested positive for methamphetamine. The mother did not participate in testing again until July 2021, when she again tested positive for methamphetamine. The mother completed substance-abuse evaluations, but there were concerns about the accuracy of the information she provided to the evaluators.

---

[2] There is some indication the father is up for parole review in March 2022.

In June 2021, the State petitioned to terminate the mother's parental rights under Iowa Code section 232.116(1)(d), (h), and (*l*) (2021) and the father's parental rights under section 232.116(1)(d), (e), (h), and (j). After a hearing, the juvenile court found the State showed by clear and convincing evidence the grounds for termination under section 232.116(1)(d) and (h) for both parents. The court also found termination is in the children's best interests and none of the reasons set forth in section 232.116(3) exist. It terminated both the mother's and the father's parental rights under section 232.116(1)(d) and (h). Both appeal.

## II. Discussion.

We review termination orders de novo. *See In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). We give weight to the juvenile court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010).

### A. Grounds for Termination.

The juvenile court found the State proved by clear and convincing evidence two grounds for terminating the mother's and the father's parental rights. We may affirm if the record supports termination on either ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We confine our analysis to section 232.116(1)(h).

The court may terminate under section 232.116(1)(h) if it finds:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.

(4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Only the last element is in dispute: whether the children could be returned to the parent's care at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the term "at the present time" to mean "at the time of the termination hearing").

The father's incarceration precludes the children from being returned to his care. *See, e.g., In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991) ("It is also clear that at the present time the children cannot be returned to the custody of G.S. because he is incarcerated."). The father instead argues that the State failed to prove the children could not be returned to the mother at the time of the termination hearing. He is without standing to do so. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (holding that a parent lacks standing to assert an argument on behalf of the other parent).

Turning to the mother's appeal, we agree with the juvenile court that the children could not be returned to the mother's care at the time of the termination hearing. The issues the State sought to address in the current CINA proceedings have existed for years.[3] The juvenile court found that "despite years of services, no meaningful change in behavior or thought processes has occurred. [The mother] does not recognize the problems in the home and takes no accountability

---

[3] The State entered into evidence a 2014 order adjudicating the children's half-siblings as CINA. One of the concerns listed in the order was the mother's "exposure of her children to unknown, dangerous individuals," including a man who was killed during an exchange of gunfire with police at her apartment while the children were present.

for them. She does not appear capable of identifying people who are inappropriate to be around." We agree with its assessment. The mother failed to satisfactorily address her mental health, issues with domestic violence, or substance use. Returning the children to her care would place them at risk of further adjudicatory harm.

Clear and convincing evidence establishes the grounds for terminating the mother's and the father's parental rights under Iowa Code section 232.116(1)(h).

### B. Reasonable Efforts.

The mother and the father also contend the State failed to "make every reasonable effort to return the child[ren] to the . . . home as quickly as possible consistent with the best interests of the child[ren]."[4] Iowa Code § 232.102(7). But reasonable efforts are not a strict substantive requirement for termination. *See In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019). The mandate instead impacts the State's ultimate burden of proving the children cannot be returned to the parent's care. *See id.* As our supreme court has recognized, "the nature of that obligation depends on the best interests of the children." *Id.* at 530. As always, the chief concern is the children's health and safety. *See id.* at 528. When returning the children to a parent's care is not appropriate, "reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child." *Id.* (quoting Iowa Code § 232.102(10)(a)).

---

[4] The mother challenges the reasonable efforts the State made for both herself and the father. As stated above, the mother cannot assert this argument on the father's behalf.

The father argues the State failed to make reasonable efforts after his February 2021 incarceration. It is unclear what services the father alleges the State should have offered, though he appears to complain that he was not afforded visitation with the children. But even if the father had received visitation while in prison, it would not have lessened the State's proof that the children could not be returned to his care at the time of the termination hearing due to his ongoing incarceration.

The mother makes a similarly vague challenge to the State's efforts to reunite her with the children, claiming that the DHS determined early on that the children would not be returned to her care. The record, however, contradicts her claim, showing that the State offered services to address the issues that led to the CINA adjudication, but the mother failed to participate consistently in the offered services. As a result, the mother never made any substantial progress in resolving the concerns about her ability to protect the children from adjudicatory harm.

The mother also complains that the DHS "gave her no opportunities for additional visitation with the children" despite her repeated requests. As we determined with the father, more visitation would have no bearing on whether the children could be returned to the mother's care at the time of the termination hearing. It is the mother's inability to protect the children from adjudicatory harm through exposing them to domestic violence and substance use, not the mother's bond with the children, that led to the termination of her parental rights.

### C. More Time.

As an alternative to termination, both parents ask for more time. Iowa Code section 232.104(2)(b) allows the court to continue the child's placement for another

six months if doing so will eliminate the need for the child's removal. But to delay permanency, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Based on the parents' history, we cannot find the need for removal will no longer exist if the parents are granted six more months to attempt to remedy their deficiencies. *See B.H.A.*, 938 N.W.2d at 233 (noting a parent's past performance shows the quality of the future care that parent can provide).

### D. Best Interests.

Finally, both the mother and the father contend termination is not in the children's best interests. In determining the children's best interests, we look to the framework described in section 232.116(2), *see In re A.H.B.*, 791 N.W.2d 687, 690-91 (Iowa 2010), which requires that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2).

Weighing the factors set forth in section 232.116(2), we agree that termination of both the mother's and the father's parental rights is in the children's best interests. The children at issue are all three years old or younger and have been removed from the parents' care for over a year. The incident that led to the juvenile court's involvement and subsequent CINA adjudication occurred over twenty months ago. Domestic violence has occurred in the home for even longer. The DHS has been offering the parents services to address the safety concerns in

the home since late 2019. But the parents have not been consistent in engaging with those services, and the issues have continued unabated.

Given the children's young ages, the statutory timeframe for termination is shortened. *Compare* Iowa Code § 232.116(1)(f) (allowing termination of parental rights to children age four and older if removed from the parent's care for at least twelve months), *with id.* § 232.116(1)(h) (allowing termination of parental rights to children age three and younger if removed from the parent's care for at least six months). The Iowa Supreme Court long ago recognized the importance of observing these limited timeframes "because patience on behalf of the parent can quickly translate into intolerable hardship for the children." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989); *accord In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute."). We will not deprive children of permanency on the hope that someday the parent will be able to provide a stable home. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). If the plan to reconcile parent and child fails, "all extended time must be subtracted from an already shortened life for the children in a better home." *A.C.*, 415 N.W.2d at 614. Because the parents have exhausted the statutory timeframe without making meaningful or even modest change, the children's best interests require termination.

**AFFIRMED ON BOTH APPEALS.**