# IN THE COURT OF APPEALS OF IOWA

No. 20-0185
Filed April 29, 2020

**IN THE INTEREST OF L.M. and H.M.,**
**Minor Children,**

**L.M., Father,**
　　Appellant,

**M.S., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.


A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


Jonathan Willier, Centerville, for appellant father.

Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Samuel K. Erhardt of Erhardt & Erhardt, Ottumwa, attorney and guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**DOYLE, Judge.**

A mother and a father appeal the termination of their parental rights. Upon our review, we affirm the juvenile court's ruling.

### *I. Background Facts and Proceedings.*

M.S. is the mother and L.M. is the father of L.M., born in 2017, and H.M., born in 2018. M.S. has four other children, not at issue, and she has a long history with the Iowa Department of Human Services (DHS). The mother has a history of substance abuse and continued drug use while pregnant; H.M. tested positive for amphetamines and methamphetamine at birth. The father was incarcerated at the time of H.M.'s birth.[1] Both children were removed from the parents' care.

The mother was offered reunification services, but her denial of substance abuse remained a major obstacle for reunification. The mother started and stopped substance-abuse treatment many times. After the birth of H.M., the mother again began treatment. Her overall progress led to semi-supervised visits, then overnight visits, and then weekend visits. The DHS was planning to return the children to the mother's care in March 2019 when her hair tested positive for methamphetamine. The mother denied using drugs, and she requested a urinalysis test be performed. That test was positive for methamphetamine. The children were returned to family foster care where they have since remained.

---

[1] The father's participation in the case was limited because of his incarceration and time "on the run." The father was released from prison to a residential facility, but the release was short-lived and revoked after he relapsed and was dishonest with the halfway house staff about his activities while released. Although the father believed he should discharge in June 2020, he acknowledged he was not a placement option for the children at the time of the termination-of-parental-rights hearing.

The mother reinitiated substance-abuse treatment, but her counselors expressed concerns with her attendance and inability to provide samples for urinalysis screenings. The mother tested positive for methamphetamine in July 2019, but she denied using drugs, stating it was positive because of a medication she was prescribed. She then stated the positive result could be because of her use of a friend's vape pen. The mother was arrested twice in September 2019 for assault.

The State then filed a petition seeking termination of the parents' parental rights. In November, the mother successfully completed substance-abuse treatment. Later, the DHS caseworker sent the mother a text message requesting she provide a sample for drug testing. The mother did not respond or get tested. The mother stated she did not get the message.

Following a termination-of-parental-rights hearing in January 2020, the juvenile court entered its order terminating the parents' parental rights. Each parent now appeals. The mother contends the State failed to prove the grounds for termination, termination was not in the children's best interests, and additional time for reunification should have been granted. The father concedes that the statutory grounds for termination of his parental rights were met under Iowa Code section 232.116(1)(h) (2019), but he argues termination of his parental rights was not in the children's best interests. He asserts his incarceration should be considered an exception to termination and that more time was warranted. Our review is de novo. *See In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019).

## II. Discussion.

Under Iowa Code chapter 232, parental rights may be terminated if: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018).[2] The juvenile court can also defer termination of parental rights if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b). In determining whether termination of parental rights is in the children's best interests, we give "primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* § 232.116(2).

"A parent does not have an unlimited amount of time in which to correct his or her deficiencies." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997). The "legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). So after statutory timelines have run, the children's best interests are promoted by termination. *See In re S.N.*, 500 N.W.2d

---

[2] Although the juvenile court must address all three steps in terminating a parent's parental rights, we will not address any step on appeal a parent does not specifically challenge. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *see also* Iowa Code § 232.116(1)-(3).

32, 35 (Iowa 1993). Simply put, children cannot wait indefinitely for stable parents. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (noting children must not be deprived permanency on the hope that someday the parent will be able to provide a stable home); *D.W.*, 791 N.W.2d at 707.

### A. *Statutory Grounds.*

Iowa Code section 232.116(1)(h) allows the court to terminate parental rights if a child (1) is three years old or younger, (2) has been adjudicated a child in need of assistance (CINA), (3) has been out of the parent's custody for at least six of the last twelve months and any trial period at home has been less than thirty days, and (4) cannot be returned to the parent at present without continued risk of adjudicatory harm. The mother does not dispute the State proved the first three elements; indeed, those elements are clear from the record. Rather, she challenges only the element that the children cannot be returned to her at present. *See* Iowa Code § 232.116(1)(h)(4). Upon our de novo review, we find the State proved that element of paragraph (h) with clear and convincing evidence.

Given the mother's long history of substance abuse and her continued denial of abusing substances, her latest completion of substance-abuse treatment cannot demonstrate the children can now be safely returned to her care. The mother was progressing toward reunification when she relapsed. Though she restarted treatment, she tested positive for drug use again in July and August 2019. After she completed treatment in November 2019, there was a missed drug test. L.M. and H.M are young and require full-time supervision. The mother's inability to maintain sobriety would place her children's safety at risk if they were returned to her care. Upon our de novo review, we agree the State established the children

could not be safely returned to the mother's care at the time of the termination-of-parental-rights hearing—there was a continued risk of adjudicatory harm.

### B. Best Interests.

In termination-of-parental-rights cases, the "principal concern is the best interests of the child[ren]." *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). The court must "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). A useful marker for a parent's future performance is that parent's past behavior. *See L.H.*, 904 N.W.2d at 149. The past is prologue to the future.

Although the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills," the legislature built this patience into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Once the grounds for termination exist, time is of the essence. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute."); *see also In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that once the time for reunification set by the legislature has expired, "patience on behalf of the parent can quickly translate into intolerable hardship for the children"). Here, more than a year has passed since the events that led to H.M.'s CINA adjudication, two years in L.M.'s case. Children are not equipped with pause buttons. Their lives cannot be put on hold to await the day a parent is ready to begin responsible parenting. *See A.M.*, 843 N.W.2d at 112 (noting we must not deprive the children of permanency in the hope that someday the parent will be able to provide a stable home); *In re T.J.O.*, 527 N.W.2d

417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."); *In re D.A.*, 506 N.W.2d 478, 479 (Iowa Ct. App. 1993) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

There is no question the mother loves her children and that she and the children share a bond. But as the caseworker testified, the mother is impulsive and immature, hindering her parenting of the children. She has refused to admit her substance abuse, a substantial barrier to treatment. The father has been incarcerated or minimally involved in the children's lives since their birth, and he acknowledges even if he were released in June 2020, the children could not be placed in his care at that time.

The DHS caseworker testified the children needed permanency and were adoptable. Considering the children's safety; the best placement for furthering the long-term nurturing and growth of the children; and the physical, mental, and emotional condition and needs of the children, we agree with the juvenile court that termination of the parents' parental rights was in the children's best interests.

### C. Additional Time.

Both parents seek additional time to allow the return of the children to his or her care. *See* Iowa Code § 232.104(2)(b) (allowing the court to continue placement of the child for six more months if it determines "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period"). The mother claims there is a "reasonable probability" that the children could be returned to her care within that time. The

father maintains additional time is in the children's best interests. We disagree on both counts. At the time of the termination hearing, the mother had not yet showed she had the ability to remain sober. The record suggests her recovery will not be complete in six months. At the time of the termination hearing, the father anticipated being discharged from incarceration in six months. He made no showing that he would be ready and able to care for the children upon his discharge. He would need time beyond a six-month extension to demonstrate his ability to safely care for the children, particularly in view of his limited relationship with the children. As the juvenile court noted, "given [the] history there is simply no evidence that additional time or additional services would allow for a reunification to occur within a period of six additional months." We agree. Because the need for the children's removal will continue to exist following the requested extension, and because the children need permanency now, additional time for reunification is not warranted and no exception applies to overcome the children's need for permanency.

### D. *Section 232.116(3) Considerations.*

Finally, we consider whether any circumstance listed in section 232.116(3) applies and, if so, whether it weighs against terminating parental rights. *See A.S.,* 906 N.W.2d at 473. The decision to avoid termination under section 232.116(3) is permissive, not mandatory. *See id.* at 475. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.,* 806 N.W.2d 458, 475 (Iowa Ct. App. 2011).

The father suggests the court need not terminate his parental rights because one of the permissive factors applies: that his absence in the children's lives is because of his commitment to an institution, citing section 232.116(3)(e). That permissive factor states the court need not terminate the parent-child relationship if it finds "[t]he absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces." Iowa Code § 232.116(3)(e). The father's argument lacks merit because the word "institution" in section 232.116(3)(e) was not intended to include penal institutions or correctional facilities. *See In re J.S.*, 470 N.W.2d 48, 51 (Iowa Ct. App. 1991); *In re J.V.*, 464 N.W.2d 887, 890 (Iowa Ct. App. 1990), *overruled on other grounds by P.L.*, 778 N.W.2d at 39-40. The father also cites *In re B.T.*, 894 N.W.2d 29 (Iowa Ct. App. 2017). But *B.T.* is a vastly different case and section 232.116(3)(e) was not implicated. *See* 894 N.W.2d at 34. There, the mother was to be discharged from a residential treatment facility about eighteen days after the termination hearing, not six months as here. *Id.* at 31. Other circumstances also existed, a close bond between mother and the child, and "a close, mature, and healthy relationship that is free of conflict" between the mother and the grandmother (whom was to be the guardian of the child on remand). *Id.* at 34-35. None of the extraordinary factors in *B.T.* exist here. *See id.* The juvenile court properly concluded that none of the permissive factors weighed against terminating the father's parental rights.

### III. Conclusion.

Under the facts and circumstances of this case, the State proved by clear and convincing evidence the children could not be returned to either parent's care

without a risk of adjudicatory harm at the time of the termination-of-parental-rights hearing. Additionally, termination of the parents' parental rights was in the children's best interests, additional time under section 232.104(2)(b) is unjustified, and no permissive factor under section 232.116(3) overweighs the children's need for permanency. For these reasons, we affirm the juvenile court's order terminating the parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**